Receipt number AUSFCC-11153220

**IN THE UNITED STATES COURT
OF FEDERAL CLAIMS**

| | |
|---|---|
| H.M. Nabavian & Sons, Inc.,<br><br>              Plaintiff,<br><br><br>    v.<br><br><br>UNITED STATES OF AMERICA,<br><br>              Defendant. | **Case No.**  26-414 C |

**COMPLAINT**

## I.    INTRODUCTION

1.    Plaintiff H.M. Nabavian & Sons, Inc. ("H.M. Nabavian") is a New York cormpany and family-owned business that sells carpets, rugs, flooring, and craft supplies from its storefront in midtown Manhattan. Plaintiff and the proposed Class are individuals and businesses in the United States from whom funds were illegally exacted when they paid tariffs imposed by a series of executive orders issued by President Donald Trump beginning in February of 2025, in reliance on the purported authority of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*.

2.    On February 20, 2026, the United States Supreme Court held that these "IEEPA tariffs" were unlawful. *Learning Resources, Inc. v. Trump*, No. 24-1287, 2026 WL 477534, at *14 (U.S. Feb. 20, 2026) ("*Learning Resources*").

3.    The now-invalidated IEEPA tariffs resulted in the unlawful collection of approximately $170 billion or more in duties. Plaintiff brings claims on behalf of itself and a Class of similarly situated businesses and persons (collectively referred to herein as "tariffed payors") for refund of the amounts they personally paid, either directly to the United States Customs & Border Protection ("CBP") or in effect through importers of record and international couriers that collected discrete, identifiable charges for the now-invalidated tariffs and remitted those amounts to CBP.

4.    Affected tariffed payors for purposes of this lawsuit consist of those who:

   a.  purchased goods and paid IEEPA tariffs or duties directly to CBP customs agents at United States ports of entry; and

   b.  purchased goods and were billed discrete, identifiable surcharges that accounted for IEEPA tariffs or duties by importers of record, which were then remitted to the United States as IEEPA duties for those goods.

5.    Plaintiff alleges that, through the IEEPA tariffs, the United States has illegally exacted money from it and members of the proposed Class. Plaintiff therefore brings this action under the Tucker Act (28 U.S.C. §1491) and the Little Tucker Act (28 U.S.C. §1346) to recover

money illegally exacted by the unlawful application of a statute, regulation, or executive order—namely IEEPA and the tariffs issued thereunder.

6.      Plaintiff and the members of the proposed Class seek refunds with interest of all IEEPA tariffs they directly or in effect paid to the United States, including payments of IEEPA tariffs as discrete, identifiable charges collected by importers acting as *de facto* collection agents ("conduits") for the United States.

7.      Plaintiff also seeks appointment of a Special Master to assist in determining the amounts owed and to oversee payment of such reimbursements to each Class member.

8.      The proposed Class does not include any entities who imported foreign goods into the United States ("importers of record") and who have brought separate claims on their own behalf before the United States Court of International Trade ("CIT"). The proposed Class also does not include consumers whose only alleged injury is the payment of higher retail prices charged subsequent to the IEEPA tariff regime.

## II.    JURISDICTION AND VENUE

9.      The United States Court of Federal Claims ("CFC") has subject matter jurisdiction under 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1) because Plaintiff and the proposed Class seek monetary relief against the United States for money illegally exacted or retained in violation of federal law.

10.     Claims for monetary recovery of less than $10,000 are subject to this Court's concurrent jurisdiction with regular federal courts, and claims in excess of $10,000 against the United States that are founded upon statutes or regulations of the United States are committed to the exclusive jurisdiction of this Court.

11.     Plaintiff and the proposed Class have standing because:

   a.   they have suffered a concrete injury-in-fact in the form of money paid by them that was illegally exacted by the United States;

   b.   their injury is fairly traceable to the imposition and collection of IEEPA tariffs invalidated in *Learning Resources*; and

    c.   their injury is redressable by a money judgment under the Tucker Act and Little Tucker Act.

12.    Plaintiff's and the proposed Class's illegal exaction claim does not require an independent money-mandating statute beyond the Tucker Act and the Little Tucker Act.[1]

## III.    PARTIES

13.    Plaintiff H.M. Nabavian is a New York company with its principal place of business in New York, New York. Plaintiff sells carpets, rugs, flooring, and craft supplies. At all relevant times, H.M. Nabavian paid IEEPA tariffs and duties that were billed, invoiced or charged to it as discrete, identifiable costs by importers of record and international couriers, including Federal Express, DHL, and United Parcel Service, which assessed and collected those IEEPA tariffs in connection with Plaintiff's shipments and remitted them to CBP.

14.    Defendant United States of America received the unlawful IEEPA tariffs and is the statutory defendant pursuant to 28 U.S.C. § 1491.

## IV.    RELEVANT FACTS

### A.  The IEEPA Tariffs And The Supreme Court's Rejection Of Them.

15.    The President has no inherent constitutional authority to impose taxes or tariffs without specific authorization of Congress. Here, President Trump asserted that IEEPA authorized him to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit . . . importation or exportation." 50 U.S.C. § 1702(a)(1)(B). The statute, however, is silent on tariffs or duties.

16.    Expressing concern about the influx of illegal drug trafficking and trade deficits, President Trump imposed tariffs pursuant to Exec. Order No. 14193, 90 Fed. Reg. 9113 (2025).

---

[1] *See Perry v. United States*, 149 Fed. Cl. 1, 25 (2020) (plaintiff raising claims pursuant to the Tucker Act need not plead a separate money-mandating statute as source of cause of action); *Casa De Cambio Comdiv S.A. de C.V. v. United States*, 48 Fed. Cl. 137, 143-48 (2000) (same); *Virgin Islands Port Auth. v. United States*, 136 Fed. Cl. 7, 13-14 (2018), *aff'd*, 922 F.3d 1328 (Fed. Cir. 2019) (same).

As the Supreme Court explained in *Learning Resources*, the President imposed a 25% duty on most Canadian and Mexican imports and a 10% duty on most Chinese imports. 90 Fed. Reg. 9114, 9118, 9122–9123.

17.    As for the trade deficit (or "reciprocal") tariffs, the President imposed a duty "on all imports from all trading partners" of at least 10%. Exec. Order No. 14257, 15045 (2025). Dozens of nations faced higher rates. *Id*. at 15049. And these tariffs applied notwithstanding any extant trade agreements. *Id*. at 15045.

18.    In response to the imposition of the IEEPA tariffs, various entities filed suit challenging President Trump's interpretation of the statute. Subsequently, the United States Government sought expedited review from the Supreme Court.

19.    In *Learning Resources,* the Supreme Court found that the United States Government had unlawfully relied on IEEPA to institute the disputed tariffs. Specifically, the Supreme Court held that the invocation of IEEPA for the imposition of tariffs constituted an unlawful expansion of executive authority.

**B. The IEEPA Tariffs Have Resulted In The Illegal Exaction of Monies From Class Members.**

20.    Through the unlawful interpretation of IEEPA and the subsequent imposition of unlawful IEEPA tariffs, the United States has collected approximately $170 billion or more.

21.    All such monies collected to pay the duties imposed by the IEEPA tariffs constitute illegal exactions. By imposing the IEEPA tariffs, the United States, including by and through CBP and its customs agents, has required Plaintiff and the proposed Class to pay, directly or in effect, money to the United States.

22.    The United States exacted monies from Plaintiff and those similarly situated by the wrongful and unlawful interpretation of IEEPA; by the misapplication of IEEPA authority to President Trump's executive orders concerning IEEPA tariffs; and, finally, by unlawfully applying IEEPA tariffs.

23.    Because the United States has wrongfully or unlawfully applied a statute to order, and through unlawful executive orders resulting from that misapplication ordered payments to it, directly or in effect, from Plaintiff and those similarly situated, the payments are illegal exactions.

### C.  Importers of Record, Including, But Not Limited To, International Couriers, Acted As Collection Conduits On Behalf Of The United States.

24.    Plaintiff and the proposed Class are directly and concretely harmed by the illegal exactions described above because they bore the economic burden of the duty payments.

25.    The United States imposed IEEPA tariffs on goods that Plaintiff and the proposed Class purchased or ordered, and the United States required that those tariffs be paid in connection with those transactions.

26.    Payments occurred in two principal ways: (a) some tariffed payors directly paid IEEPA duties to United States CBP agents at ports of entry or upon delivery; and (b) some tariffed payors paid those duties to the United States by discrete, identifiable charges, which were billed on invoices, collected by importers and couriers, and then remitted by those importers and couriers to CBP.

27.    In the latter scenario, importers of record and international couriers served as third-party collection conduits between tariffed payors (including Plaintiff and members of the proposed Class) and the United States. They bore none of the economic burden of the duty payments and suffered no concrete injury from collecting those payments from Plaintiff and Class members and remitting them to CBP.

28.    For example, FedEx publicly explains that "[a]s a transportation provider and **customs broker**, FedEx **is required to assess and collect duties and taxes in accordance with current customs regulations and government directives at the time of import**"

(emphases added).[2] That is, FedEx collects tariff and duty amounts from customers and transmits those amounts to CBP in satisfaction of the Government's demand.

29.     Similarly, as reflected in a recent article, DHL typically sends a tariffed payor a bill for customs duty payments, which the recipient of the bill must then pay. As one such DHL customer who paid a $67 tariff on a $345 pendant purchased from a Japanese seller on eBay has recently stated, "[t]he principle is obvious….If it was illegal to collect my money, I would certainly like to have my illegally collected money returned to me."[3] But representatives of the United States Government, including the Secretary of the Treasury, have expressed the view that such a buyer may well get nothing.

30.     Because importers and couriers assessed and collected IEEPA-denominated charges as separate line items and remitted those amounts as IEEPA duties, they did not bear the economic burden for those portions of the tariffs. Instead, they acted as conduits through which the United States illegally exacted money from Plaintiff and the Class.

31.     Under the illegal exaction doctrine applied by this Court and the Federal Circuit, the presence of a third-party collection intermediary does not displace the tariffed payor as the party with concrete, economic injury. In economic substance, "the Government has [Plaintiff's and the Class's] money in its pocket." *Clapp v. United States*, 127 Ct. Cl. 505, 512, *cert. denied*, 348 U.S. 834 (1954).

### D. The United States Government Has Already Acknowledged That IEEPA Tariffs Must Be Refunded, All But Admitting That The Tariffs Were Illegally Exacted.

32.     While the appeal was going on, representatives of the United States Government assured the lower federal courts that if the Government's position on the imposition of tariffs

---

[2] FedEx, *Navigating U.S. Tariffs and Customs Regulations* (last visited Mar. 12, 2026), https://www.fedex.com/en-us/shipping/international/us-tariffs-impact.html.

[3] Peter Eavis, *Consumers Paid Tariffs on Overseas Items. Now They Want a Refund*, NY Times, Mar. 9, 2026, https://www.nytimes.com/2026/03/09/business/tariff-refunds-consumers.html.

through the IEEPA was rejected, the sums obtained through those unlawful tariffs would be returned to those who paid them.

33.    Many companies that imported foreign goods and had been injured by these tariffs utilized importers, and those importers of record have filed claims in the CIT.  The United States Government went on record in one of these cases that, if its conduct was declared to be unlawful by the Supreme Court in *Learning Resources*, the Government would reimburse entities that were compelled to pay IEEPA tariffs:

> [A]s the Government notes in its response to Plaintiffs' motion for a preliminary injunction here, it "[has] made very clear—both in this case and in related cases—that [it] will not object to the [c]ourt ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful."  Def.'s Resp. in Opp'n to Pls.' Mot. for a Prelim. Inj. at 3, Dec. 11, 2025, ECF No. 25 ("Gov't Resp."); *see also id*. at 3–4 (citing Def.'s Resp. in Opp'n to Mot. for Prelim. Inj. & Summ. J. at 42, V.O.S. Selections, No. 25-066, ECF No. 32, Apr. 29, 2025 ("[E]ven if future entries are liquidated, defendants do not intend to oppose the [c]ourt's authority to order reliquidation . . . .  Such reliquidation would result in a refund of all duties determined to be unlawfully assessed, with interest."); Joint Stipulation Regarding Reliquidation 2, *Princess Awesome, LLC v. U.S. Customs and Border Prot.*, No. 25-078 (Ct. Int'l Trade filed Apr. 24, 2025), ECF No. 17, May 23, 2025 (Defendants "will not oppose the [c]ourt's authority to order reliquidation of entries of merchandise subject to the challenged IEEPA duties and that they will refund any IEEPA duties found to have been unlawfully collected, after a final and unappealable decision has been issued finding the duties to have been unlawfully collected and ordering defendants to refund the duties.")).

Op. & Order in *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255, 2025 WL 3634261, at *1-2 (Ct. Int'l Trade Dec. 15, 2025). The CIT noted that the Government had repeated this promise often in related challenges to Trump's IEEPA-based tariffs. *Id*. at *2 n. 1. While these statements involved claims by importers, they should apply with equal force to situations where importers shifted the burden of payment directly or in effect to Plaintiff and members of the proposed Class.

34.     The United States' statements that it will not object to reliquidation are an implicit admission that, if the IEEPA tariffs were found unlawful, then any monies collected from tariffed payors by virtue of the misapplication of IEEPA were illegally exacted.

35.     Moreover, Treasury Secretary Scott Bessent ("Bessent") previously suggested that the United States Government would challenge any corporate or importer refund claims before the CIT on the grounds that the tariffs were passed on to those entities' customers. For example, Secretary Bessent noted that FedEx, which has filed a case before the CIT seeking refund of IEEPA tariffs, should "explain how [FedEx is] going to get the money back to the consumers if [it], in fact, passed those costs along."[4]

**E. Since The Decision Holding IEEPA Tariffs Unlawful, The United States Government Has Seemingly Reversed Its Position Regarding Payment Of Refunds To Tariffed Payors Such As Plaintiff.**

36.     Since the Supreme Court's decision, however, Secretary Bessent has suggested that many tariffed payors who paid unlawful tariffs for foreign goods might not benefit from any refunds.[5] Secretary Bessent was quoted as saying that any repayment of illegally exacted IEEPA tariffs would be made to importers: "[i]f there is a payout, it's just going to be the

---

[4] Tony Romm, Businesses Push for Tariff Refunds as Trump Aides Hint at Fight to Come, NY Times, Feb. 25, 2026, https://www.nytimes.com/2026/02/25/business/trump-tariffs-refunds-lawsuits.html.

[5] *See, e.g.*, 'It is not up to me': Secretary Bessent pushes back against tariff refunds, CNN.com, Feb. 22, 2026, https://www.cnn.com/2026/02/22/politics/video/treasury-secretary-scott-bessent-tariff-revenue-gorsuch-scotus-opinion-congress; Liz Moyer, Treasury's Bessent Dances Around Questions About Tariff Refunds, Barron's, Feb. 22, 2026, https://www.barrons.com/livecoverage/sundayshows0222/card/treasury-s-bessent-dodges-questions-about-tariff-refunds-DxVg5oYeNKPgDbLLj3Ql?gaa_at=eafs&gaa_n=AWEtsqcN9-RucUDSEP7lfPO7y07Y5UzpgIXzsQorX1W4nmtAPdXO-S4EKdO2&gaa_ts=699b84aa&gaa_sig=OsmcTMkAbL1uWqEMoh-h7mtWFtwtCJvrZuADYXzLy-knXaAreysZpKQ8-7OGmhaS00Wy6uNsaqF5I-CFCO-ehg%3D%3D; Daniel Flatley, Bessent Says Tariff Refund Would Be 'Ultimate Corporate Welfare,' Bloomberg, Feb. 20, 2026, https://finance.yahoo.com/news/bessent-says-tariff-refund-ultimate-223942102.html.

ultimate corporate welfare"; with respect to tariff refunds, he had "a feeling the American people won't see it."[6] Those American people include members of the proposed Class.

37.    Indeed, the public stance of the Government now is that little or no reimbursement payments may be made to any entity who paid IEEPA tariffs.  In an interview on February 22, 2026, Secretary Bessent said that "[t]he Supreme Court pushed it back down to the International Trade Court… So, they haven't told us that we do have to repay it. As [Supreme Court Justice] Amy Coney Barrett said during the hearing that I was at, it will be a mess. But, we'll see whether we have to repay. We will see what the duration of the repayment is."[7]

38.    The United States Government's public statements contradict its statements before the CIT that it would cooperate with any order to repay all IEEPA tariffs should those tariffs be found unlawful.

39.    The United States, in a recent declaration submitted in proceedings before the CIT, affirmed that as of March 4, 2026, CBP had not returned any illegally exacted IEEPA tariffs.[8] In a subsequent declaration, the CBP asserted that it "is now facing an unprecedented volume of refunds. Its existing administrative procedures and technology are not well suited to a task of this scale and will require manual work that will prevent personnel from fully carrying out the agency's trade enforcement mission."[9] The agency suggested that completion of the

---

[6]  Daniel Flatley, Bessent Says Tariff Refund Would Be 'Ultimate Corporate Welfare,' Bloomberg, Feb. 20, 2026, https://finance.yahoo.com/news/bessent-says-tariff-refund-ultimate-223942102.html.

[7]  Jack Fink, In Dallas, U.S. Treasury Secretary says Supreme Court ruling removes President Trump's ability to quickly leverage tariffs, CBS News, Feb. 22, 2026, https://www.cbsnews.com/texas/news/bessent-supreme-court-ruling-trump-tariff-authority-dallas/.

[8] Decl. of Brandon Lord In Resp. To The Ct.'s Questions Of March 3, 2026 at 2-3, *Atmos Filtration, Inc. v. United States*, No. 26-01259 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 19.

[9] Decl. of Brandon Lord  at 7-8, *Atmos Filtration, Inc. v. United States*, No. 26-01259 (Ct. Int'l Trade Mar. 6, 2026), ECF No. 31.

process may take years, citing a historical example of an unlawful tariff from the 1990s.[10] CBP

stated that it is in the process of updating its Automated Commercial Environment to try to

expedite payments, but it is by no means clear how long that process will take and who will

benefit from it.[11]

40.    As of the time of filing of this Complaint, the United States is under no

mandatory timeline to begin processing refunds of illegally exacted IEEPA tariffs to importers,

let alone tariffed payors.[12]

**VI. The Illegally Exacted IEEPA Tariffs Have Imposed Huge Costs On Plaintiff and the Proposed Class.**

41.    The non-partisan Congressional Budget Office has found that the unlawful

IEEPA tariffs have resulted in $170 billion or more in illegally exacted payments:[13]

---

[10] *Id*. at 11.

[11] *Id*. at 11-12.

[12] Or.at 1, *Atmos Filtration, Inc. v. United States*, No. 26-01259 (Ct. Int'l Trade Mar. 6, 2026), ECF No. 33.

[13] U.S. Congress Joint Economic Committee - Minority, Fact Sheet, Feb. 2026, https://www.jec.senate.gov/public/_cache/files/7cc03e65-d40a-465f-9e88-09dd53d3502f/jec-fact-sheet-on-cost-of-tariffs-for-families-update.pdf.

| Month | Total Tariff Costs Paid by Consumers | Tariff Costs Paid per Household |
|---|---|---|
| Feb-25 | $7.25 Billion | $54.65 |
| Mar-25 | $7.89 Billion | $59.52 |
| Apr-25 | $13.12 Billion | $98.93 |
| May-25 | $17.7 Billion | $133.45 |
| Jun-25 | $20.82 Billion | $156.99 |
| Jul-25 | $21.54 Billion | $162.47 |
| Aug-25 | $22.83 Billion | $172.15 |
| Sep-25 | $22.95 Billion | $173.05 |
| Oct-25 | $24.12 Billion | $181.92 |
| Nov-25 | $23.7 Billion | $178.76 |
| Dec-25 | $21.7 Billion | $163.64 |
| Jan-26 | $27.74 Billion | $209.22 |
| **Total Paid Between Feb 2025 and Jan 2026** | **$231.35 Billion** | **$1,744.75** |

Source: Original JEC Calculations using monthly reports by the U.S. Department of the Treasury, Bureau of the Fiscal Service, U.S. Census Bureau 2025 projections on population, and estimates of consumer tariff costs from the Congressional Budget Office.

42.     Other independent studies reveal similar figures.[14]

43.     Without a timeline for refunds in place, and in light of the United States Government's contradictory statements regarding its obligation to make refunds, Plaintiff brings an illegal exaction claim to vindicate its rights and obtain the remedy guaranteed to it and all those similarly situated under the Tucker Act and/or the Little Tucker Act.

V.     **CLASS ACTION ALLEGATIONS**

        **A. Class Definition.**

44.     Plaintiff brings this action on its own behalf and on behalf of all others similarly situated as an opt-in class action pursuant to Rule 23 of the Rules of the Court of Federal Claims on behalf of the following Class:

---

[14]     The Budget Lab, Tracking the Economic Effects of Tariffs, Mar. 2, 2026, https://budgetlab.yale.edu/research/tracking-economic-effects-tariffs; Erica York & Alex Durante, Tariff Tracker: Impact of Trump Tariffs & Trade War by the Numbers, Tax Foundation, Feb. 23, 2026, https://taxfoundation.org/research/all/federal/trump-tariffs-trade-war/.

All individual citizens of the United States, or corporations organized under the laws of the United States, who: (a) purchased goods and paid IEEPA tariffs or duties directly to CBP customs agents at United States ports of entry; and/or (b) paid IEEPA tariffs or duties to importers of record, including, but not limited to, international couriers, in the form of discrete, identifiable charges or costs, billed, invoiced, or charged to them by importers of record assessing and collecting IEEPA tariffs or duties on behalf of the United States.

Excluded from the Class are: (a) any entities that have filed, will file, or will be viewed as filing on their own behalf claims regarding the IEEPA tariffs before the Court of International Trade; (b) employees of the federal government and their families; (c) any judicial officer presiding over this action and their families; and (d) any individual or corporate entity that paid an allegedly higher price for a good purchased from a merchant who increased the price of their goods to account for the cost of IEEPA tariffs.

### B. Numerosity.

45.     The proposed Class is anticipated to consist of millions of individuals and businesses, and it thus satisfies the numerosity requirement of U.S. Ct. Fed. Claims R. 23(a)(1).

### C. Commonality.

46.     There are multiple questions of law common to the proposed Class, most particularly: (a) whether Class members paid IEEPA tariffs directly or in effect to the United States; (b) whether the IEEPA tariffs were illegally exacted from the Class; and (c) whether the Class is entitled to refunds of monies illegally exacted. U.S. Ct. Fed. Claims R. 23(a)(2).

### D. Typicality.

47.     Plaintiff's claim is typical of those of the Class, pursuant to U.S. Ct. Fed. Claims R. 23(a)(3). Defendant treated all Class members the same or substantially the same and their alleged refunds will be established by the same means.

### E. Adequacy of Representation.

48.     The proposed class representative will fairly and adequately protect the interests of its class members. Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Class. Additionally, Plaintiff seeks identical relief that would benefit all

putative members of the Class. Plaintiff has also retained counsel competent and experienced in the prosecution of class action litigation to represent itself and the Class. Plaintiff is willing to fully participate in the litigation and direct class counsel. The adequacy of representation requirement of U.S. Ct. Fed. Claims R. 23 (a)(4) is thus met here.

## VI.    CLAIM FOR RELIEF

### <u>COUNT 1</u>
### Refunds of All Monies Illegally Exacted Pursuant to IEEPA and Tariffs Imposed Under IEEPA.

49.    Plaintiff incorporates Paragraphs 1 through 48 above as though set forth herein.

50.    The United States, by application of IEEPA and by imposition of tariffs pursuant to IEEPA, has caused Plaintiff and the proposed Class to make payments to it in the form of tariffs.

51.    Payments were made to the United States, by Plaintiff and members of the proposed Class, in two ways.

52.    *First*, when purchasing goods overseas and re-entering the United States, Plaintiff and the proposed Class paid IEEPA tariffs directly to CBP customs agents at United States ports of entry.

53.    *Second*, when billed, invoiced, or otherwise charged discrete, identifiable IEEPA tariffs by importers of record (including, but not limited to, international couriers) who acted as collection conduits for the United States, Plaintiff and the proposed Class made payments in effect to the United States.

54.    By the Supreme Court's decision in *Learning Resources*, the IEEPA tariffs were determined to be unlawful.

55.    Accordingly, all monies paid by Plaintiff and the proposed Class to the United States, directly or in effect, were paid because of:

    a.   A misapplication of IEEPA;

    b.   A misinterpretation of IEEPA; and

    c. An unlawful tariff imposed by virtue of such misapplication or misinterpretation.

56. Because Plaintiff and the proposed Class paid money to the United States based upon the misapplication or misinterpretation of a statute, regulation, or order, these payments are illegal exactions.

57. Plaintiff and the proposed Class have suffered a cognizable injury-in-fact that is traceable to the United States' conduct, and that can be redressed by refunds.

58. Under the Tucker Act and the Little Tucker Act, Plaintiff and the proposed Class are entitled to refunds of all monies illegally exacted by the United States.

59. Plaintiff demands that the United States refund all illegally exacted IEEPA tariffs that it imposed which were paid by Plaintiff and Class members, with interest. Plaintiff further requests the Court to exercise its inherent discretionary powers under Rule 53 of the Rules of the Court of Federal Claims to appoint a Special Master for the purposes of determining and administering refunds.

## VII.   PRAYER FOR RELIEF

60. Plaintiff respectfully requests that this Court:

    a. certify the proposed opt-in Class and appoint Plaintiff's Counsel as Class Counsel;

    b. appoint a Special Master to oversee the determination of refunds plus interest for Class members, and coordinate with the Court of International Trade as may be necessary and proper;

    c. award refunds to Class members who opt in, including interest;

    d. award Plaintiff reasonable costs, including attorneys' fees incurred in bringing this action; and

    e. grant such other relief as the Court deems appropriate and proper.

Dated: <u>March 16, 2026</u>                    Respectfully submitted,


/s/ *Robert J. Cynkar*
Robert J. Cynkar
McSweeney, Cynkar & Kachouroff PLLC
3126 Elmendorf Drive
Oakton, VA 22124
(703) 621-3300
rcynkar@mck-lawyers.com

Scott A. Martin (*pro hac vice forthcoming*)
Kartik S. Madiraju (*pro hac vice forthcoming*)
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, New York 10004
(646) 357-1100
smartin@hausfeld.com
kmadiraju@hausfeld.com

Michael D. Hausfeld (*pro hac vice forthcoming*)
John Thompson (*pro hac vice forthcoming*)
HAUSFELD LLP
1200 17th Street N.W.
Washington, DC 20036
(202) 540-7200
mhausfeld@hausfeld.com
jthompson@hausfeld.com

Michael P. Lehmann (*pro hac vice forthcoming*)
HAUSFELD LLP
580 California Street, 12th Floor
San Francisco, California 94104
(415) 633-1908
mlehmann@hausfeld.com

Justin S. Nematzadeh (*pro hac vice forthcoming*)
NEMATZADEH PLLC
1129 Northern Boulevard, Suite 457
Manhasset, NY, 11030
(646) 799-6729
jsn@nematlawyers.com

John W. ("Don") Barrett (*admitted*)
Katherine B. Riley (*pro hac vice forthcoming*)
Sterling Aldridge (*pro hac vice forthcoming*)
BARRETT LAW GROUP, P.A.
404 Court Square North
P.O. Box: 927
Lexington, MS 39095
Telephone: (662) 834-2488

16

dbarrett@barrettlawgroup.com
kbriley@barrettlawgroup.com
saldridge@barrettlawgroup.com

Gordon Ball (*pro hac vice forthcoming*)
GORDON BALL PLLC
322 31st Avenue N #113
Nashville, TN  37203
(865) 525-7028
gball@gordonball.com

Charles J. LaDuca (*pro hac vice forthcoming*)
Charles Barrett (*pro hac vice forthcoming*)
CUNEO GILBERT FLANNERY & LADUCA,
LLP
2445 M Street NW
Suite 740
Washington, DC  20037
Tel: 202 789 3960
charlesl@cuneolaw.com
cbarrett@cuneolaw.com

**Counsel for Plaintiff and Proposed Class**