**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| H.M. NABAVIAN & SONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 26-414C |
| v. | ) | Judge Roumel |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT'S MOTION TO DISMISS**

---

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

COLLIN T. MATHIAS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0315
Collin.T.Mathias@usdoj.gov

June 15, 2026                    *Attorneys for Defendant*

**TABLE OF CONTENTS**

DEFENDANT'S MOTION TO DISMISS ..................................................................................... 1

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF THE CASE...................................................................................................... 2

    I.    Statutory and Regulatory Framework .................................................................... 2

    II.    Refund Proceedings In the CIT............................................................................. 5

    III.    H.M. Nabavian's Allegations ................................................................................ 6

ARGUMENT ............................................................................................................................. 7

    I.    Standard of Review............................................................................................... 7

        A.    Standard for Motion to Dismiss Under RCFC 12(b)(1) .............................. 7

        B.    Standard for Motion to Dismiss Under RCFC 12(b)(6) ............................. 8

    II.    The Court Lacks Jurisdiction Over H.M. Nabavian's Complaint ......................... 9

    III.    H.M. Fails to State a claim for an Illegal Exaction for Tariff Surcharges............ 14

CONCLUSION.......................................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
466 F.3d 1000 (Fed. Cir. 2006)...................................................................................... 16

*Aerolineas Argentina v. United States*,
77 F.3d 1564 (Fed. Cir. 1996)................................................................................... 14, 15

*AGS Company Automotive Solutions v. U.S. Customs and Border Protection*,
813 F. Supp. 3d 1298 (Ct. Int'l Trade 2025) ............................................................... 5

*ARP Materials, Inc. v. United States*,
47 F.4th 1370 (Fed. Cir. 2022) ..................................................................................... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................... 9

*Authentic Apparel Grp., LLC v. United States,*
123 Fed. Cl. 92 (Fed. Cl. 2015) ................................................................................... 8

*Banks v. United States,*
741 F.3d 1268 (Fed. Cir. 2014)..................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007)........................................................................... 8

*Boeing Co. v. United States*,
968 F.3d 1371 (Fed. Cir. 2020)..................................................................................... 16

*Cary v. United States*,
552 F.3d 1373 (Fed. Cir. 2009)..................................................................................... 8

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ...................................................................................................... 13

*Columbus Regional Hosp. v. United States*,
990 F.3d 1330 (Fed. Cir. 2021)..................................................................................... 14

*Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*,
18 F.3d 1581 (Fed. Cir. 1994)....................................................................................... 3

*Eastport S.S. Corp. v. United States*,
372 F.2d 1002 (Ct. Cl. 1967) ........................................................................................ 14

*Edelmann v. United States*,
　76 Fed. Cl. 376 (2007) ........................................................................................ 13

*FDA v. Alliance for Hippocratic Medicine*,
　602 U.S. 367 (2024)............................................................................................ 13

*Forest Products Northwest, Inc. v. United States*,
　453 F.3d 1355 (Fed. Cir. 2006)......................................................................... 10

*Holley v. United States*,
　124 F.3d 1462 (Fed. Cir. 1997)........................................................................... 8

*In re Section 301 Cases*,
　524 F. Supp. 3d 1355 (Ct. Int'l Trade 2021) ...................................................... 5

*Learning Resources, Inc. v. Trump*,
　146 S. Ct. 628 (2026)................................................................................... passim

*Macrotel Int'l Corp. v. United States*,
　24 Fed. Cl. 98 (1995) ........................................................................................ 10

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
　298 U.S. 178 (1936)............................................................................................. 8

*Mora v. United States*,
　118 Fed. Cl. 713 (2014) .................................................................................... 13

*Murthy v. Missouri*,
　603 U.S. 43 (2024)....................................................................................... 12, 13

*National Veterans Legal Servs. Program v. United States*,
　968 F.3d 1340 (Fed. Cir. 2020)......................................................................... 16

*Nichols v. United States*,
　7 Wall. 122 (1869) ............................................................................................ 10

*Norsk Hydro Canada, Inc. v. United States*,
　472 F.3d 1347 (Fed. Cir. 2006)...................................................................... 8, 10

*Piszel v. United States*,
　833 F.3d 1366 (Fed. Cir. 2016)......................................................................... 14

*Piszel v. United States*,
　121 Fed. Cl. 793 (2015) .................................................................................... 14

*Potter v. United States,*
   124 Fed. Cl. 469 (2015) ................................................................................... 13

*PrimeSource Bldg. Prods., Inc. v. United States,*
   59 F.4th 1255 (Fed Cir. 2023) ........................................................................ 11

*Shinyei Corp. of Am. v. United States,*
   355 F.3d 1297 (Fed. Cir. 2004) ......................................................................... 5

*Solar Energy Indus. Ass'n v. United States,*
   86 F.4th  (Fed. Cir. 2024) .............................................................................. 11

*Target Corporation v. United States,*
   134 F.4th 1307 (Fed. Cir. 2025) ................................................................. 3, 10

*Transpacific Steel LLC v. United States,*
   4 F.4th 1306 (Fed. Cir. 2021) ........................................................................ 11

*Trusted Integration, Inc. v. United States,*
   659 F.3d 1159 (Fed. Cir. 2011) ......................................................................... 7

*United States v. Bormes,*
   568 U.S. 6 (2012) ............................................................................................ 10

*United States v. Haggar Apparel Co.,*
   526 U.S. 380 (1999) .......................................................................................... 3

*V.O.S. Selections, Inc. v. Donald J. Trump,*
   149 F.4th 1312 (Fed. Cir. 2025) ..................................................................... 11

*Williams v. Sec'y of Navy,*
   787 F.2d 552 (Fed. Cir. 1986) ........................................................................... 8

**Statutes**

19 U.S.C. § 1500 ................................................................................................... 4

19 U.S.C. § 1504 ................................................................................................... 4

19 U.S.C. § 1505 ................................................................................................... 4

19 U.S.C. § 1514 ................................................................................................... 4

28 U.S.C. § 1491(c) ....................................................................................... 2, 9, 10

28 U.S.C. § 1581.................................................................................................................. 3

28 U.S.C. § 1581(a) ........................................................................................................... 4

28 U.S.C. § 1581(i)......................................................................................................... 4, 9

28 U.S.C. § 1585.................................................................................................................. 3

**Rules**

RCFC 12(b)(1) ................................................................................................................. 7, 8

RCFC 12(b)(6) ..................................................................................................................... 8

RCFC 12(h)(3) ..................................................................................................................... 8

**Regulations**

19 C.F.R. § 141.1(b)(1)....................................................................................................... 15

19 C.F.R. § 159.1 ................................................................................................................. 4

19 C.F.R. § 159.11(a)........................................................................................................... 4

19 C.F.R. § 159.12(a)........................................................................................................... 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| H.M. NABAVIAN & SONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 26-414C |
| v. | ) | Judge Roumel |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of

Federal Claims (RCFC) defendant, the United States, respectfully requests that the Court dismiss

the complaint of plaintiff H.M. Nabavian & Sons, Inc. (H.M. Nabavian) for lack of subject

matter jurisdiction or, alternatively, for failure to state a claim upon which relief may be granted.

In support of this motion, we rely upon the complaint, the following brief, and the attached

appendix.[1]

**INTRODUCTION**

Last year, the President imposed tariffs under the International Emergency Economic

Powers Act (IEEPA). Shortly after, certain companies sued in district courts throughout the

country as well as in the Court of International Trade (CIT). In February 2026, the Supreme

Court held that IEEPA did not authorize tariffs, and also held that the CIT had exclusive

jurisdiction over the IEEPA tariff challenges. *Learning Resources, Inc. v. Trump*, 146 S. Ct.

628, 637 n.1 (2026).

---

[1] As an appendix, we include relevant filings from the refund proceedings currently
ongoing at the Court of International Trade for this Court's convenience. Because there are often
duplicative filings across multiple cases, we include only one copy where they are substantively
similar.

Since then, approximately 4,000 parties have filed complaints, including at least two proposed class actions, seeking refunds of IEEPA tariffs at the CIT.  Simultaneously, U.S. Customs and Border Protection (CBP) has developed an online platform, the Consolidated Administration and Processing of Entries (CAPE), for importers to request IEEPA tariff refunds. Through CAPE, CBP has made tremendous progress—more than half of the total amount of IEEPA tariffs collected are already being processed and CBP has refunded billions of dollars.

H.M. Nabavian filed essentially the identical type of case in the Court of Federal Claims, asking for refunds of IEEPA tariffs paid as an importer of record and of tariff surcharges paid as a consumer.  This Court's jurisdictional statute explains that the Court lacks jurisdiction over anything within the exclusive jurisdiction of the CIT.  For this straightforward reason, the complaint should be dismissed for lack of jurisdiction.  Alternatively, the complaint fails to state a claim for an illegal exaction for tariff surcharges and therefore must be dismissed under Rule 12(b)(6) of this Court's rules.

**STATEMENT OF THE CASE**

**I.      Statutory and Regulatory Background**

a.      This Court's jurisdictional statute—the Tucker Act—expressly prohibits the Court from exercising jurisdiction over any matter within the CIT's exclusive jurisdiction.  The Tucker Act states: "Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action with the exclusive jurisdiction of the Court of International Trade."  28 U.S.C. § 1491(c).

b.      For more than a century, Congress has vested a single national court with exclusive jurisdiction over tariff cases, *see* Customs Administration Act of 1890, ch. 407, 26

2

Stat. 131 (establishing Board of Appraisers); Act of May 28, 1926, ch. 411, 44 Stat. 669 (establishing Customs Court), ensuring "uniformity and consistency" by designating a single forum with "expertise in international trade and tariff matters," *Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1586 (Fed. Cir. 1994); *see, e.g., United States v. Haggar Apparel Co.*, 526 U.S. 380, 394 (1999) (CIT's "expertise … guides it in making complex determinations in a specialized area of the law").  Congress has granted the CIT exclusive jurisdiction over a host of different types of suits addressing international trade matters.  28 U.S.C. § 1581.  Congress also provided that the CIT "shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States."  28 U.S.C. § 1585.

To understand "Congress's carefully crafted statutory scheme," *see Target Corporation v. United States*, 134 F.4th 1307, 1315 (Fed. Cir. 2025), it is helpful to understand how the processing of a particular importer's entries generally works (in a simplified form).  An importer seeking to bring goods into the United States files through CBP's Automated Commercial Environment (ACE) system an "entry" with detailed information relevant to calculating any duties owed and paying initial estimated duties.  *Euro-Notions Fla., Inc. v. United States*, No. 25-595 (CIT) (*Euro-Notions*), ECF No. 15-2 at 3-4; Appx4-5.  CBP may conduct an initial review of the classification of the imported article under the Harmonized Tariff Schedule of the United States.  *Id.*  The import entry then remains open for months, during which time CBP has the discretion to conduct any inquiry required to finalize the determination of the duties along with applicable import taxes and fees.  *See id.* at 5.

3

The point at which CBP concludes that process and finalizes its assessment of duties, taxes and fees on the entry is known as "liquidation."  19 U.S.C. § 1500; 19 C.F.R. § 159.1. Liquidation ordinarily must be completed with a year of entry (or else entries are deemed liquidated at the rate and amount of duties asserted by the importer, 19 U.S.C. § 1504(a)(1); 19 C.F.R. § 159.11(a), but CBP can extend that timeline for up to three years in one-year increments, 19 U.S.C. § 1504(b); 19 C.F.R. § 159.12(a), (d), (e).  Upon liquidation, CBP may refund any duties the importer has previously paid that have been determined to be improper.  19 U.S.C. § 1505(b).

Once liquidation is complete, the importer can challenge CBP's decisions by filing an administrative protest under 19 U.S.C. § 1514.  Protests must be filed "within 180 days after" liquidation.  *Id.* § 1514(c)(3).  Liquidation becomes final if no protest is filed within that timeframe.  *Id.* § 1514(a).  If CBP denies the protest, the party who filed it can challenge CBP's decision at the CIT under 28 U.S.C. § 1581(a).  Alternatively, an importer can invoke the CIT's "residual jurisdiction under § 1581(i)" if the relief available under § 1581(a) is unavailable or "manifestly inadequate"—that is, "an exercise in futility."  *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1379 (Fed. Cir. 2022) (internal quotation omitted).

Section 1581(i), the residual provision, gives the CIT exclusive jurisdiction over suits "aris[ing] out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" or the "administration and enforcement" of such tariffs, duties, fees, or import taxes.  28 U.S.C. § 1581(i).  When acting under § 1581(i), the CIT has "the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties.'"  *See AGS Company*

4

*Automotive Solutions v. U.S. Customs and Border Protection*, 813 F. Supp. 3d 1298, 1302 (Ct. Int'l Trade 2025) (quoting *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363 (Ct. Int'l Trade 2021)); *see also Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1314 (Fed. Cir. 2004) (finding a limited exception to the finality of liquidation and granting the relief of reliquidation).

## II.    Refund Proceedings In the CIT

While *Learning Resources* was pending, thousands of importers who paid IEEPA duties began filing complaints at the CIT seeking IEEPA duty refunds. These thousands include at least two proposed class actions commenced by consumers that seek refunds from both the United States and large importers such as the United Parcel Service and Federal Express. *See Harbourview Products International, LLC v. UPS*, CIT No. 26-1471; *MSR Imports, Inc. v. U.S. Customs and Border Protection*, CIT No. 26-2645. The Chief Judge of the CIT issued an administrative order staying new cases pending the Supreme Court's decisions in order "to determine the appropriate next steps for resolution" following a final, unappealable decision. *See In re; Procedures for Entering a Stay in New IEEPA Tariff Cases*, CIT Administrative Order 25-02 (Dec. 23, 2025); Appx1.

Since then, the CIT has addressed issues relating to refunds in a handful of cases. *See V.O.S. Selections, Inc. v. Donald J. Trump*, CIT No. 25-66 (*V.O.S.*), ECF No. 81; Appx16; *see also Euro-Notions*, ECF No. 13; *AGS Company Automative Solutions v. U.S. Customs and Border Protection*, CIT No. 25-255 (*AGS*), ECF No. 42; *Grant & Bowman, Inc. v. U.S. Customs and Border Protection*, CIT No. 25-689 (*Grant & Bowman*), ECF No. 13. This process has included an injunction directing CBP to "liquidate . . . without regard to the IEEPA duties" "any and all unliquidated entries that were entered subject to the IEEPA duties," and to "reliquidate[]

5

without regard to" the IEEPA duties "[a]ny liquidated entries for which liquidation is not final." *See V.O.S.*, ECF No. 82; Appx18-20; *see also Euro-Notions*, ECF No. 12; *AGS*, ECF No. 43; *Grant & Bowman*, ECF No. 14.  Immediate compliance with these injunctions has been suspended while CBP has developed and implemented CAPE, which launched in late April 2026.  *See V.O.S.*, ECF No. 98-1 at 4 (Thomas Decl.).  As of June 5, 2026, CAPE has been used for submissions covering more than 16.74 million entries totaling $94.94 billion, and refunds worth more than $23 billion (including interest) have been processed by CBP and sent to the U.S. Department of Treasury for disbursement.  *See Euro-Notions*, ECF No. 34 (Lord Decl.) at ¶¶ 4-5; Appx53-54.  CBP continues to enhance and further develop CAPE for increased functionality.  *See V.O.S.*, ECF No. 98-1 at 4-5 (Thomas Decl.); Appx27-28.

On June 2, 2026, the Government filed a notice of interlocutory appeal of the CIT's injunctions but has stated that it will not seek a stay of the injunctions unless the Court requires immediate compliance.  *See V.O.S.*, ECF No. 91; Appx21; *see also Euro-Notions*, ECF No. 31; *AGS*, ECF No. 48; *Grant & Bowman*, ECF No. 18.  This appeal does not implicate the refunds already provided or actively available for importers through CAPE.  CBP continues to process CAPE refunds.

Since the appeal, the *V.O.S.* plaintiffs have filed a motion to certify a class of "[a]ll importers who paid tariffs imposed under [IEEPA] and who hold claims that are not currently eligible for processing and refund through [CAPE]."  *See V.O.S.*, ECF No. 99; Appx34.

### III.    H.M. Nabavian's Allegations

According to H.M. Nabavian's complaint, H.M. Nabavian is a U.S. business that "paid tariffs imposed by a series of executive orders" under IEEPA, later invalidated by the Supreme

6

Court. [2]  *See* Compl. ¶¶ 1-2.  H.M. Nabavian alleges that it paid IEEPA tariffs "either directly to [CBP] or, in effect, through importers of record and international couriers that collected discrete, identifiable charges."  *Id.* ¶ 3.  H.M. Nabavian contends that these tariffs constitute an illegal exaction by the unlawful application of a statute, regulation, or executive order under the Tucker Act.  *Id.* ¶¶ 5, 58-59.  H.M. Nabavian also seeks to bring these claims on behalf of members of a proposed class of similarly situated businesses and persons, *see id.* ¶ 3, but not on behalf of any party who "brought separate claims on their own behalf before the" CIT.  *See id.* ¶ 8.

H.M. Nabavian asks that the Court order "that the United States refund all illegally exacted IEEPA tariffs that it imposed which were paid by Plaintiff and Class members, with interest."  *Id.* ¶ 59, Prayer for Relief.

## ARGUMENT

### I.    Standard of Review

#### A.    Standard for Motion to Dismiss Under RCFC 12(b)(1)

In determining whether it has subject matter jurisdiction to entertain a plaintiff's complaint, the Court generally "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  Nevertheless, the plaintiff still bears the burden of establishing jurisdiction by a preponderance of the evidence.  *Id.*  If this Court's jurisdiction is challenged, a plaintiff cannot rely merely upon allegations in the complaint, but

---

[2]  For purposes of this motion only, defendant accepts as true factual allegations in the complaint.  Should the Court deny this motion, defendant reserves the right to contest each and every factual allegation in the complaint.  For example, we have not yet verified that H.M. Nabavian is an importer of record as alleged.  *See* Compl. ¶ 52.

must instead bring forth relevant, competent proof to establish jurisdiction.  *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).  The Court's fact-finding is not limited to the pleadings alone; it may consider relevant evidence to ascertain if the Court possesses jurisdiction to entertain plaintiff's claims.  *See Banks v. United States,* 741 F.3d 1268, 1277 (Fed. Cir. 2014).  "[A] party may not expand a court's jurisdiction by creative pleading." *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).  Instead, courts "look to the true nature of the action . . . in determining jurisdiction."  *Id.* (quoting *Williams v. Sec'y of Navy*, 787 F.2d 552, 557 (Fed. Cir. 1986)).  If a plaintiff is unable to substantiate the jurisdictional allegations, the Court should dismiss the complaint under RCFC 12(b)(1).  *See* RCFC 12(h)(3).

  **B.  Standard for Motion to Dismiss Under RCFC 12(b)(6)**

  To state a valid claim for legal relief, a plaintiff "must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief."  *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007)).  At a minimum, this requires plaintiff to "state the necessary elements of [its] claim, independent of any defense that may be interposed."  *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997); *see Authentic Apparel Grp., LLC v. United States,* 123 Fed. Cl. 92, 95 (Fed. Cl. 2015) (quoting *Holley*).  Moreover, the complaint must contain "factual allegations [sufficient] to raise a right to relief above the speculative level."  *Cary,* 552 F.3d at 1376 (citing *Twombly*).  Although "[t]his does not require the plaintiff to set out in detail the facts upon which the claim is based," it does require, at a minimum, "enough facts to state a claim to relief that is plausible on its face."  *Id.* (citing *Twombly*).  "A claim has facial

plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  This is a "context-specific" inquiry "requiring the [] court to draw on its experience and common sense." *Id*. at 663-64.  "[C]onclusory statements" or "threadbare recitals of a cause of action's elements" are insufficient to state a plausible claim for relief.  *Id.* at 663.

## II.       The Court Lacks Jurisdiction Over H.M. Nabavian's Complaint

Because H.M. Nabavian's claims are squarely within the CIT's subject-matter jurisdiction, this Court should dismiss the complaint.  H.M. Nabavian alleges jurisdiction based on the Tucker Act for its illegal exaction claim and seeks as relief a refund of the IEEPA tariffs it alleges it has paid.  *See* Compl. ¶ 9.  But the Court of International Trade possesses exclusive jurisdiction over tariffs.  *See Learning Resources*, 146 S. Ct. at 637 n.1.  The statute provides that the Court of International Trade has "exclusive jurisdiction of any civil action . . . that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" as well as "administration and enforcement with respect to [such] matters."  28 U.S.C. § 1581(i).  Relying on this language, the Supreme Court recently concluded that the litigation challenging IEEPA tariffs fell within the CIT's exclusive jurisdiction.  *Learning Resources*, 146 S. Ct. at 637 n.1.

Because the Court of International Trade possesses exclusive jurisdiction to entertain claims arising out of the IEEPA tariffs, this Court lacks jurisdiction over this complaint.  *See* 28 U.S.C. § 1491(c).  H.M. Nabavian fails to mention the relevant portion of the Tucker Act that prohibits the Court from exercising jurisdiction: "[n]othing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive

jurisdiction of the Court of International Trade." 28 U.S.C. § 1491(c); *see Macrotel Int'l Corp. v. United States*, 24 Fed. Cl. 98, 99 (1995) ("This Court lacks jurisdiction over 'any civil action within the exclusive jurisdiction of the Court of International Trade.'") (citation omitted).

It has been "long recognized that an additional remedy in the Court of Claims is foreclosed when it contradicts the limits of a precise remedial scheme." *United States v. Bormes*, 568 U.S. 6, 13 (2012) (collecting cases). As the Supreme Court has explained, claims for the "improper assessment of duties" have long been outside the purview of the Tucker Act or its predecessors. *See id.* (citing *Nichols v. United States*, 7 Wall. 122, 131 (1869)). Therefore, "if this case is within the jurisdiction of the Court of International Trade, it cannot be within the jurisdiction of the Court of Federal Claims." *See Forest Products Northwest, Inc. v. United States*, 453 F.3d 1355, 1359 (Fed. Cir. 2006) (citing 28 U.S.C. § 1491(c)).

There is no question here that plaintiff here seeks refunds of IEEPA duties. *See* Compl. ¶¶ 5, 9, 50-55. Exercising jurisdiction over this claim would circumvent "Congress's carefully crafted statutory scheme" that dictates how tariffs and duties are assessed, refunded, and challenged within CBP. *See Target*, 134 F.4th at 1315. The Supreme Court's first example of "a precise remedial scheme" that forecloses this Court's jurisdiction is this very scheme. *See Bormes*, 568 U.S. at 13 (citing *Nichols*, 7 Wall. at 131).

It is true that H.M. Nabavian has attempted to frame its claims as an illegal exaction, in an effort to plead its way into this Court. But the Court looks to "true nature of the action," not its label. *See Norsk Hydro Canada*, 472 F.3d at 1355. And the true nature of this action is that it is a challenge requesting tariff refunds, firmly within the CIT's jurisdiction. H.M. Nabavian's theory is that it paid "[a]n unlawful tariff imposed by virtue of such misapplication or

10

misinterpretation" of IEEPA. *See* Compl. ¶ 55. That is the exact claim made by plaintiffs in the CIT litigation and many other CIT cases about tariffs. *See V.O.S. Selections, Inc. v. Donald J. Trump*, 149 F.4th 1312, 1322 (Fed. Cir. 2025); *see also, e.g.*, *Solar Energy Indus. Ass'n v. United States*, 86 F.4th 1349 (Fed. Cir. 2024); *PrimeSource Bldg. Prods., Inc. v. United States*, 59 F.4th 1255 (Fed Cir. 2023); *Transpacific Steel LLC v. United States*, 4 F.4th 1306 (Fed. Cir. 2021). Allowing this case to proceed as a valid illegal exaction claim would allow all challenged tariffs to be challenged at the Court of Federal Claims, contradicting the Tucker Act's express language and upending the massive and complex proceedings regarding refunds that have been underway for months at the CIT. This Court should follow the Supreme Court's binding precedent that IEEPA tariff challenges "arise[] out of [a] law of the United States providing for . . . tariffs" and therefore fall within the CIT's exclusive jurisdiction. *Learning Resources*, 146 S. Ct. at 637 n.1 (quoting 28 U.S.C. § 1581(i)(1)).

Even H.M. Nabavian recognizes the obvious identicality. It seeks two types of refunds. The first type, for parties who "paid IEEPA tariffs directly to CBP," *see* Compl. ¶ 52, is unquestionably the same claim as thousands of plaintiffs currently at the CIT, and is unquestionably within the CIT's jurisdiction. *See Learning Resources*, 146 S. Ct. at 637 n.1. H.M. Nabavian recognizes that this is the same claim, asserting that its proposed class would exclude any parties "who have brought separate claims on their own behalf before the" CIT. *See* Compl. ¶ 8. But that just makes our point. The CIT has jurisdiction over both sets of parties— those who have filed refund claims already and those who may make refund claims in the future.

The second type of requested refund, for parties who were "charged discrete, identifiable IEEPA tariffs by importers of record," *see* Compl. ¶ 53, is still an IEEPA tariff challenge arising

11

out of a law of the United States providing for tariffs within the CIT's jurisdiction, because it too ultimately arises from the same modifications to the Harmonized Tariff Schedule of the United States and ultimately depends on the merits of a challenge to those modifications. *See Learning Resources*, 146 S. Ct. at 637 n.1. Such parties would assert the same merits arguments as parties who paid the tariffs directly. (The difference is that a claim for a refund from the government for a tariff paid by another entity likely has a defect in its standing, but the CIT should decide the standing question, and that additional hurdle does not suggest that a plaintiff's claims could fall within this Court's jurisdiction even when challenges by parties who paid tariffs directly to CBP fall within the CIT's jurisdiction.)

Even if the Court were to conclude that it has statutory jurisdiction over H.M. Nabavian's second type of requested refund, standing would present an insuperable jurisdictional defect. H.M. Nabavian alleges that it is owed a refund of charges "billed on invoices" from private companies acting as importers of record, but does not explain what Government statute, regulation, or directive compelled this action by private companies. *See* Compl. ¶¶ 26-30. As we discuss in the next section, there is none: The Government did not require any importer to pass along any tariff charge to any customer. Any decisions to pass through tariff charges from an importer of record to another party were decisions of that importer of record, not the government. It is a "bedrock principle that a federal court cannot redress injury that results from the independent action of some third party not before the court." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (internal quotation marks and citation omitted).

FedEx, UPS, and thousands of other importers of record are actively pursuing their own IEEPA tariff refunds through litigation and administrative processes at CBP such as CAPE.

12

These are the parties with a "concrete, particularized, and actual or imminent[,] fairly traceable" injury to the Government's action of requiring importers of record to pay IEEPA tariffs. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). H.M. Nabavian, however, does not identify what Government action required any importer of record to demand any payment from H.M. Nabavian, nor could it. *See* Compl. ¶ 53. Therefore, H.M. Nabavian does not meet its burden to show that the Government is responsible for an injury resulting from the independent action of importers of record. *See Murthy*, 603 U.S. at 57; *see also FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 383 (2024) ("The causation requirement also rules out attenuated links—that is, where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing."). And in any event, as emphasized above, it is the CIT that should decide standing because these challenges "arise[] out of [a] law of the United States providing for . . . tariffs" and therefore fall within the CIT's exclusive jurisdiction. *See Learning Resources*, 146 S. Ct. at 637 n.1 (quoting 28 U.S.C. § 1581(i)(1)).

And regardless, because this allegation only alleges harm caused by private entities (that is, the decision to impose an IEEPA surcharge), not a discrete Government action, this Court still would lack jurisdiction. *See Edelmann v. United States*, 76 Fed. Cl. 376, 380 (2007); *Mora v. United States*, 118 Fed. Cl. 713, 716 (2014); *Potter v. United States*, 124 Fed. Cl. 469, 474-75 (2015).

### III.    H.M. Nabavian Fails to State a Claim for an Illegal Exaction for Tariff Surcharges

Alternatively, the Court must dismiss H.M Nabavian's claims for refunds regarding "charged discrete, identifiable IEEPA tariffs by importers of record," or tariff surcharges, because H.M. Nabavian fails to state a cognizable illegal exaction claim. *See* Compl. ¶ 53.

The Federal Circuit has explained that "an illegal exaction claim may be maintained when 'the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from [him] in contravention of the Constitution, a statute, or a regulation.'" *Aerolineas Argentina v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)). Thus, a valid illegal-exaction claim must satisfy two elements: (1) money was paid over to the Government; and (2) in doing so, the Government violated a provision of the Constitution, a statute, or a regulation. *Piszel v. United States*, 121 Fed. Cl. 793, 801 (2015), *aff'd*, 833 F.3d 1366 (Fed. Cir. 2016) (citation omitted). The first prong of this two-part analysis may be shown where money was paid directly to the Government, or was paid to others at the direction of the Government to meet a governmental obligation. *Aerolineas Argentinas*, 77 F.3d at 1573. Indeed, the "essence of an illegal exaction is when 'the government has the citizen's money in its pocket.'" *Columbus Regional Hosp. v. United States*, 990 F.3d 1330, 1348 (Fed. Cir. 2021) (citation omitted).

H.M. Nabavian's tariff surcharge illegal exaction claim suffers from a glaring, fatal flaw—H.M. Nabavian has not alleged that it paid money to a third party at the direction of the Government to satisfy a Government obligation. *See Aerolineas Argentinas*, 77 F.3d at 1572-73. At most, H.M. Nabavian alleges that certain importers of record "assessed and collected IEEPA-

14

denominated charges as separate line items and remitted those amounts as IEEPA duties." *See* Compl. ¶ 30.  However, H.M. Nabavian does not identify a single Government direction that required these importers of record to collect money on the Government's behalf.  Nor could it: The Government required importers of record to deposit IEEPA duties.  *See* 19 C.F.R. § 141.1(b)(1) (establishing that importers of record are liable for all duties).  It never required importers of record to charge IEEPA duties to third parties.  Instead, demonstrating that there was no legal obligation imposed by the Government, certain importers of record made the business decision to pay IEEPA tariffs and pass along those payments to the business's consumers as tariff surcharges.[3]

The facts underlying *Aerolineas Argentinas* are critically different.  *Aerolineas Argentinas* dealt with the statutory regime governing responsibility for the costs to house asylum seekers.  77 F.3d at 1568.  Before the 1986 Immigration User Fee Statute, airlines found themselves paying the costs of housing asylum seekers who arrived on their flights, and Congress passed the statute to require Immigration and Naturalization Service (INS) to pay.  *Id.* at 1570-71.  But INS continued to enforce an outdated regulation requiring airlines to bear the costs.  *Id.* at 1571.  The Federal Circuit held that the Government illegally exacted money from the airlines by burdening them with the Government's statutory obligation to cover the costs.  *Id.* at 1568, 1578.  The facts underlying H.M. Nabavian's allegation are essentially the opposite:  the

---

[3] Since the *Learning Resources* decision, several putative consumer class actions have been filed against importers of record such as FedEx and UPS seeking recovery of tariff surcharges paid to these large importers of record.  *See In re FedEx Tariff Litigation*, No. 2:26-cv-02181 (W.D. Tenn. June 1, 2026); *Ward v. EssilorLuxottica S.A.*, No. 1:26-cv-01133 (E.D.N.Y. Feb. 26, 2026); *Anastopoulo v. United Parcel Serv. Inc.*, No. 1:26-cv-01005 (N.D. Ga. Feb. 20, 2026).

United States required importers of record to pay tariffs, and some of those importers of record in turn allegedly charged H.M. Nabavian a surcharge to make up for lost revenue.

The Federal Circuit has set forth the jurisdictional foundation for illegal exaction claims, explaining that they are one of the three general types of claims against the Government, in addition to contract and money-mandating-statute claims. *See Boeing Co. v. United States*, 968 F.3d 1371, 1382-83 (Fed. Cir. 2020); *National Veterans Legal Servs. Program v. United States*, 968 F.3d 1340, 1347-48 (Fed. Cir. 2020). But H.M. Nabavian is seeking to create a new category of illegal exaction claim in this Court—where Government action has required a third party to pay and that third party has in turn passed its injury on to other consumers through a surcharge. This type of illegal exaction claim lacks any legal basis and would exceed the Court's limited statutory jurisdiction. And when applied to tariffs, it would encroach on the unique and exclusive jurisdiction of a specialized Article III court and the CIT's expertise in this field. It would also permit double recovery of a single tariff deposit paid to the United States, something this Court routinely rejects. *Cf., e.g.*, *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017 (Fed. Cir. 2006) ("Generally, the double recovery of damages is impermissible." (collecting cases)). Accordingly, H.M. Nabavian fails to state an illegal exaction claim within this Court's jurisdiction.

## CONCLUSION

For these reasons, the United States respectfully requests that this Court dismiss H.M Nabavian's complaint.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M.McCARTHY
Director

CLAUDIA BURKE
Deputy Director

/s/Collin T. Mathias
COLLIN T. MATHIAS
Trial Attorney
Commercial Litigation
Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0315
Collin.T.Mathias@usdoj.gov

Dated: June 15, 2026

17