**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| H.M. NABAVIAN & SONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 26-414C |
| v. | ) | Judge Roumel |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**APPENDIX**

**TABLE OF CONTENTS**

Court of International Trade Administrative Order 25-02 (Dec. 23, 2025) ................................... 1

March 6, 2026 Declaration of Brandon Lord (*Euro-Notions*, ECF No. 15-2) .............................. 2

April 17, 2026 Order Lifting Stay and Requiring Counsel to Confer for Closed Settlement Conferences (*V.O.S. Selections*, ECF No. 81) ................................................... 16

April 17, 2026 Injunction Order (*V.O.S. Selections*, ECF No. 82) ............................................ 18

June 2, 2026 Defendants' Notice of Appeal (*V.O.S. Selections*, ECF No. 91) ........................... 21

June 4, 2026 Declaration of Executive Assistant Commissioner Susan S. Thomas (*V.O.S. Selections*, ECF No. 98-1)[1] .................................................................................. 24

June 4, 2026 Plaintiff's Motion for Class Certification (*V.O.S. Selections*, ECF No. 99) .......... 34

June 10, 2026 Declaration of Brandon Lord (*Euro-Notions*, ECF No. 34) ................................ 52

---

[1] Attachments not included.

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **IN RE: PROCEDURES FOR ENTERING A STAY IN NEW IEEPA TARIFF CASES** | **Administrative Order 25-02** |

To facilitate the administration of new cases that continue to be filed challenging the imposition of tariffs under the International Emergency Economic Powers Act ("IEEPA"), see International Emergency Economic Powers Act, Pub. L. No. 95-223, § 201–08, 91 Stat. 1625, 1626–29 (1977) (codified as amended at 50 U.S.C. §§ 1701–10), it is hereby **ORDERED**:

All currently unassigned cases and new cases filed after the date of this Administrative Order involving claims arising from and seeking relief relating to the announcement or imposition of tariffs invoking IEEPA through Executive Orders 14193, 14194, 14195, or 14257, as amended, see Executive Order 14193, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9113, 9114 (Feb. 1, 2025); Executive Order 14193, 90 Fed. Reg. at 9114; Executive Order 14194, Imposing Duties to Address the Situation at Our Southern Border, 90 Fed. Reg. 9117, 9118 (Feb. 1, 2025); Executive Order 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9121, 9122 (Feb. 1, 2025); Executive Order 14257, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15041 (Apr. 7, 2025), and which invoke the court's jurisdiction under 28 U.S.C. § 1581(i) ("New IEEPA Tariff Cases"), shall be stayed upon commencement and without further action by the court;

No order of assignment for New IEEPA Tariff Cases shall be issued upon or before entry of the stay; and

The Clerk must maintain a schedule of cases subject to this stay. The court expects to determine the appropriate next steps for resolution of the New IEEPA Tariff Cases following a final, unappealable decision in V.O.S. Selections, Inc. v. United States, 49 CIT __, 772 F. Supp. 3d 1350 (2025); aff'd in part, vacated in part, 149 F.4th 1312 (Fed. Cir. 2025), cert. granted, Appeal No. 25-250 (S. Ct.). Any party seeking to lift the stay before the court does so sua sponte must provide good cause indicating why their case merits earlier consideration.

Dated: December 23, 2025                    ____/s/  Mark A. Barnett____
        New York, New York                  Chief Judge Mark A. Barnett

# Exhibit B

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| ATMUS FILTRATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; AND RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection <br><br> Defendants. | Court No. 26-01259 |

**DECLARATION OF BRANDON LORD**

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022.   In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act.   I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual Property

Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties.  Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

**FRAMEWORK FOR ENTRY AND LIQUIDATION**

2. In general, in accordance with the applicable statutory and regulatory legal framework, importers are required to deposit estimated duties on each entry of imported merchandise at the time the merchandise is entered into the United States or shortly thereafter.  Thereafter, CBP is required to "liquidate" each entry, which entails fixing the final amount of duty owed.  If CBP does not liquidate an entry within one year of entry (with certain prescribed exceptions), it will liquidate by operation of law at the rate and amount of duties asserted by the importer at the time of entry; this is referred to as "deemed liquidation."  To mitigate the risk of deemed liquidation, which may result in an underpayment of duties, taxes and fees lawfully owed for the entry, since the entry will liquidate at the rate of duty, value, quantity, and amount of duties asserted by the importer of record without any verification by CBP, CBP's Automated Commercial Environment (ACE) – the system of record for imported merchandise – is programmed to automatically liquidate entries 314 days after the date of entry into the United States, unless liquidation is extended or suspended in accordance with law, or a CBP user manually removes the entry from this automated process.  Given the volume of entries made each year, CBP is unable to affirmatively review and liquidate each entry, and the majority of entries automatically liquidate.  After an entry is liquidated, CBP has the statutory authority to reliquidate the entry within 90 days of the original liquidation to fix any errors in the liquidation.

2

3. In general, upon liquidation or reliquidation, CBP is required to collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation.

4. CBP's system for processing and liquidating entries is ACE. ACE is the system through which the trade community submits required data regarding imports and exports to CBP and its partner federal government agencies. ACE is CBP's system of record for the collection and refund, as appropriate, of estimated or assessed duty for imported merchandise, which includes the ACE Entry Summary module, for processing entry summaries to assess duties on the merchandise, and the ACE Collections module, for processing the collection and refund (as appropriate) of duties or estimated duty deposits associated with the entry summaries in the ACE Entry Summary module.

5. ACE contains multiple applications with different functionalities that are designed to account for critical processes. These processes are intentionally handled by different personnel categories within CBP to ensure that statutory and regulatory requirements are met and that all duties, taxes, and fees have been paid. ACE is further designed to implement various system controls and validations to ensure that the Agency fulfills its mandate to protect the revenue while also protecting national security and processing lawful international trade.

6. The majority of import entries are filed electronically using ACE, although a small number of entries are still filed using paper forms. For entries filed using paper, CBP manually inputs the data into ACE. Accordingly, ACE contains all import entry records, whether the entry was originally filed using ACE or paper forms. No duty calculation adjustments or refunds are performed in paper format – only electronically in ACE.

3

7. Importers declare the duties owed for imported merchandise on Entry Summary lines in the entry covering the merchandise. This is in accordance with the applicable legal framework for the entry of imported merchandise, including CBP's instructions for the Entry Summary Form 7501, which apply to entries filed in ACE as well as on paper. Entries often have multiple Entry Summary lines, generally averaging approximately 20.5 Entry Summary lines per entry. An Entry Summary line covers a commodity from one country, and includes the quantity, entered value, relevant Harmonized Tariff Schedule of the United States (HTSUS) provisions, and all charges, rate(s) of duty, and tax applicable to such merchandise.

8. For each Entry Summary line, importers must report all applicable HTSUS provisions. This means that, in addition to including the Chapter 1-97 regular duty rate classification, importers must also report any applicable Chapter 99 provisions for any additional duties owed, including IEEPA duties, and those imposed pursuant to Section 232 of the Trade Expansion Act of 1962 and/or Sections 201 and/or 301 of the Trade Act of 1974, or applicable exclusions from these additional duties, as well as any applicable antidumping or countervailing duties (AD/CVD) or duty deposits owed. Therefore, if multiple HTSUS provisions apply to the imported merchandise that is reported on a given Entry Summary line, all such HTSUS provisions are reported on the same line, and all associated duties are deposited together for the merchandise covered by a particular Entry Summary line.

9. For AD/CVD duties, CBP administers orders and instructions from the Department of Commerce ("Commerce") related to such duties. Generally, importers are required to declare that their merchandise is subject to AD/CVD, and the liquidation of AD/CVD entries is automatically suspended in ACE until CBP receives AD/CVD liquidation instructions from Commerce. When CBP receives AD/CVD liquidation instructions

4

from Commerce, CBP must liquidate such entries within six months after receiving the notice of removal of the suspension or otherwise the entries will be liquidated by operation of law at the rate and amount of duty asserted by the importer.  Given the volume and complexity of AD/CVD instructions that CBP is required to process – for example, in fiscal year 2025, CBP reviewed and processed over 2,264 separate Commerce AD/CVD instructions – it is often the case that entries subject to AD/CVD are processed and finalized for liquidation close to the expiration of the six-month deadline.

10. If it is determined upon liquidation or reliquidation that excess moneys have been deposited, such that a refund with interest is due to the importer, CBP certifies the refund and interest amounts to the Department of the Treasury, which then employs its own processes to disburse the certified amounts to the importers of record.

**THE COURT OF INTERNATIONAL TRADE'S**
**MARCH 5, 2026, AMENDED ORDER**

11. For the reasons explained below, CBP is not able to comply with the Court of International Trade's order of March 4, 2026, "that, with respect to any and all unliquidated entries that were entered subject to the IEEPA duties, U.S. Customs and Border Protection [must] liquidate those entries without regard to the IEEPA duties,"  and that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties."   Although this declaration was prepared based on the Court's March 4, 2026 order, the same considerations apply with regard to the Court's amended order of March 5, 2026, which ordered that "with respect to any and all unliquidated entries that were entered subject to the IEEPA duties imposed by the Executive Orders considered by the Supreme Court in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026), U.S. Customs and Border Protection [must] liquidate those entries without regard to the IEEPA

5

duties," and that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties."

12. As of March 4, 2026, over 330,000 importers have made a total of over 53 million entries in which they have deposited or paid duties imposed pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq. (the "subject entries").  As of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion.  Approximately 20.1 million entries remain unliquidated as of March 4, 2026.

13. Currently, it is not possible for CBP to immediately prevent any additional entries from liquidating without IEEPA duties.  CBP automatically liquidates formal entries in ACE each Friday, starting at 02:00 AM ET.  This liquidation process in ACE runs several hours during the middle of the night so as not to slow down international cargo processing.  Over 700,000 entries were scheduled to liquidate at 2:00 AM ET Friday, March 6, 2026, of which CBP identified approximately 339,000 entries that include IEEPA duties.  Approximately 333,000 additional entries that include IEEPA duties are scheduled to liquidate at 2:00 AM ET Friday, March 13, 2026.

14. To stop the liquidation of formal entries with IEEPA duties that are already scheduled to liquidate, CBP would need to manually extend the liquidation date or would need to reprogram ACE to stop the liquidation of all entries scheduled to liquidate.  CBP does not have the capability of separating out which entries scheduled to liquidate are subject to IEEPA duties from those that are not for purposes of stopping the liquidation process in ACE that is scheduled to run at 2:00 AM ET Friday, March 6, 2026.  However, if CBP were to stop the scheduled liquidation of all the more than 700,000 entries, then some of those entries (approximately 1,000) would miss their liquidation deadline, and

6

would be liquidated by operation of law at the rate and amount of duty asserted by the importer of record (see paragraph 9 above), which in some cases may be contrary to AD/CVD liquidation instructions or other provisions of law.

15. In addition to formal entries, there are also informal entries filed pursuant to the special entry procedures provided in subpart C of part 143 of the Customs Regulations in Title 19 of the Code of Federal Regulations. Informal entries liquidate immediately upon the importer paying the duties due on the entry. 19 C.F.R. § 159.10(a)(1). Of the 53,173,939 entries filed with IEEPA duties, 33,730,325 or 63% are informal entries. Although CBP stopped accepting IEEPA duty deposits for informal entries on February 24, 2026, there are around 4 million informal entries that were filed before February 24, 2026, that have not yet liquidated. Many of these entries will automatically liquidate on March 16, 2026, when importers pay their March Periodic Monthly Statement. CBP does not have a process to prevent the liquidation of informal entries.

16. CBP has also identified over 15 million entries that liquidated with IEEPA duties on or before December 4, 2025, meaning that they were beyond CBP's 90-day voluntary reliquidation period at the time of the Court's March 4, 2026 order. However, for approximately 63,059 of these entries, the 90-day period expired on March 4, 2026. For an additional approximately 75,614 entries, the 90-day period will expire on March 12, 2026, the day before the next scheduled liquidation/reliquidation date of next Friday, March 13, 2026.

**USING CBP'S EXISTING CAPABILITIES
TO PROCESS IEEPA DUTY REFUNDS**

17. In light of the Court's March 5, 2026 amended order, CBP is now facing an unprecedented volume of refunds. Its existing administrative procedures and technology

are not well suited to a task of this scale and will require manual work that will prevent personnel from fully carrying out the agency's trade enforcement mission. Personnel would be redirected from responsibilities that serve to mitigate imminent threats to national security and economic security. Those activities include, but are not limited to, detecting and disrupting transshipped goods, protecting against free trade agreement abuse, and detecting AD/CVD evasion all of which are illicit actions that threaten U.S. domestic industry.

18. Although CBP's instructions for the Entry Summary Form 7501 direct importers to breakout the applicable duties for each HTSUS classification that is declared for the same merchandise on the same Entry Summary line (to include Chapter 99 numbers), importers frequently combine all applicable duties into the Chapter 1-97 HTSUS classification. As a result, for some entries, the Entry Summary records do not clearly reflect the precise amount of duties that were deposited specifically for IEEPA HTSUS provisions and not for any other HTSUS provision that is also applicable to the same merchandise on the same Entry Summary line. Because importers have flexibility in reporting applicable duties at the Entry Summary line level and the deposit of duties is accepted at the Entry Summary level, isolating the IEEPA duties from the other duties deposited for the Entry Summary requires manual calculations by CBP personnel who must then manually update each individual Entry Summary line to remove the IEEPA tariff to ensure correct duty amounts are applied. Only then would ACE be able to reassess the proper duty owed and issue a refund of the IEEPA duties paid.

19. Currently, ACE can support large scale uniform changes of the same data element(s) across a group of Entry Summaries. However, current system limitations allow CBP to process a maximum of 10,000 Entry Summary lines in one submission. Additionally, the

8

mass processing function requires CBP personnel to manually compile Excel spreadsheets that identify batches of subject entries. To mass process the removal of the hundreds of HTSUS numbers for IEEPA duties from entries, CBP would need to manually execute approximately 170,000 mass update actions to cover the 1,684,648,252 Entry Summary lines that need to be updated. Additionally, it is not uncommon for this mass processing operation to kick out (or fail to process) entries with anomalies that need to be individually evaluated and addressed, adding an unquantifiable amount of time given the unprecedented magnitude of this effort.

20. In addition to refunding the IEEPA duties, CBP must also pay importers interest, as required by law. Although ACE can automatically calculate interest payments in certain circumstances, there are other circumstances where interest must be manually calculated by CBP personnel. These circumstances include Entry Summaries for which duty deposits and/or non-IEEPA refunds were made on multiple dates, resulting in multiple collection records for the Entry Summary, such as when an importer submits a correction after making its initial estimated duty deposit, which results in a supplemental duty deposit.

21. The current system requires refunds be certified for accuracy by personnel from both CBP's Office of Field Operations and Office of Finance, separately, before submission to the Department of the Treasury for issuance. Assuming each Entry Summary with IEEPA tariffs is entitled to a refund, then 53,173,939 refunds would need to go through this process. There is no workaround in ACE that would allow this process to be circumvented.

22. CBP published the Interim Final Rule (IFR) Electronic Refunds (91 FR 21), stating that effective February 6, 2026, CBP will issue all refunds electronically. Yet, many

9

importers have not taken the necessary steps to receive refunds electronically. Pursuant to the IFR, all CBP refunds have been electronic as of February 6, 2026. There are 330,566 importers who have paid IEEPA duties or duty deposits. While CBP has issued numerous communications regarding the new rule, only 21,423 entities (mostly importers or their customs brokers) have completed the set-up process to receive their refunds electronically. Until importers complete the process to receive refunds electronically, the refunds will be rejected. Since February 6, 2026, CBP has been unable to process 7,700 refunds for 2,897 importers because those importers had not completed the necessary steps to receive refunds electronically.

23. CBP's Import Specialists (IS) and Entry Specialists (ES) are responsible for the processing of all entries of imported merchandise and related corrections, enforcement actions, and administrative protests. For example, CBP Entry Specialists are required by law or policy to perform approximately 20 separate functions daily related to entry processing, revenue protection and enforcement, as well as approximately 15 additional functions weekly, and approximately 10 additional functions monthly.

24. Once the review of an entry is complete and any manual duty calculations completed (see paragraph 18 above), it takes an IS or ES approximately 5 minutes to process an individual refund, including amending, liquidating and certifying the refund for each entry. The refund processing for the 53,173,939 entries with IEEPA duties will require 4,431,161 man hours for CBP to complete.

25. It is not feasible for CBP to divert all IS and ES personnel to processing IEEPA duty refunds on a full-time basis with no time off. If CBP's IS and ES personnel were diverted to focus full-time on processing IEEPA duty refunds for the millions of entries and Entry Summary lines on which IEEPA duties have been paid, CBP's other functions

10

and responsibilities would be severely disrupted and the agency would not be able to continue to adequately perform its mission, including its revenue protection mandate and its vital national security functions.

26.  CBP has never been ordered to, nor has it attempted to, process a volume of refunds anywhere near the volume of total entries and Entry Summary lines on which IEEPA duties have been deposited.  However, where CBP's predecessor, the U.S. Customs Service, was previously ordered to refund to exporters the Harbor Maintenance Fee (HMF) that was held to have been unconstitutionally imposed as applied to exports by the Supreme Court in *United States Shoe Corporation v. United States* (1998), the process took several years to complete and required an updated regulatory procedure.

**DEVELOPMENT OF NEW FUNCTIONALITY IN ACE**

27. CBP has a history of developing effective processes to meet its legal responsibilities and operational needs that also provide efficiencies for industry, and we continue to do so now.  In preparing for the potential need to refund IEEPA duties, CBP has considered how to implement a process to issue IEEPA duty refunds in a more efficient manner than the above-described, currently available processes.  CBP is confident that it can develop and implement new ACE functionality that will streamline and consolidate refunds and interest payments on an importer basis, rather than issuing 53,173,939 separate entry-specific refunds with multiple payments going to the same importer.   Though operational, legal, and technical considerations may require alterations or modifications, CBP anticipates that the process will involve the following steps:

- The importer files a declaration in ACE that includes a list of entries on which IEEPA duties were paid.

- ACE runs a series of validations on each entry within the declaration and

11

Appx13

automatically re-calculates the duty owed without the IEEPA tariffs (with applicable interest).

- CBP verifies the declaration and processes refunds as soon as practicable.

- ACE automatically finalizes (liquidates or reliquidates) the entries.

- ACE automatically aggregates the refunds with interest by importer and liquidation date.

- CBP certifies the refunds.

- The Department of the Treasury issues IEEPA refunds electronically.

28. CBP estimates that the automated controls described above will save CBP over 4 million hours compared with the manual processes it would otherwise have to complete.

29. CBP is making all possible efforts to have this new ACE functionality ready for use in 45 days. This new process will require minimal submission from importers. It will also minimize errors by ensuring accurate IEEPA refund calculations through system validations and allowing for a review period for CBP to resolve any discrepancies with the importer and to confirm no other outstanding enforcement issues or no revenue is owed. The process will be simpler and more efficient than the existing functionalities, and CBP will provide guidance on how to file to refund declarations in the new system.

12

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 6th day of March, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

13

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| V.O.S. SELECTIONS, INC.; PLASTIC SERVICES AND PRODUCTS, LLC d/b/a GENOVA PIPE; MICROKITS, LLC; FISHUSA INC.; and TERRY PRECISION CYCLING LLC;<br><br>     Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION; PETE R. FLORES, in his official capacity as Acting Commissioner for United States Customs and Border Protection; JAMIESON GREER, in his official capacity as United States Trade Representative; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; and HOWARD LUTNICK, in his official capacity as Secretary of Commerce;<br><br>     Defendants. | Before: Richard K. Eaton, Judge<br><br>Court No. 25-00066 |

**ORDER**

Upon consideration of the papers and proceedings had herein, it is hereby

**ORDERED** that the stay in this case is lifted *sua sponte*; and it is further

**ORDERED** that counsel shall confer with counsel for plaintiffs in *AGS Company Automotive Solutions v. United States* (1:25-cv-00255-RKE) and *Grant & Bowman, Inc. v. United States* (1:25-cv-00689-RKE), and transmit to the court by April 24, 2026, the names of up to three lawyers to serve as representatives at the closed settlement conference that is scheduled in *Euro-Notions Florida, Inc. v. United States* (1:25-cv-00595-RKE), ECF No. 19, for April 28, 2026, at 2:00 p.m. EDT. The three lawyers will be in addition to counsel for Euro-Notions Florida, Inc.

Court No. 25-00066                                                                                     Page 2

and may include lawyers from any of the law firms listed on page 10 of the motion to lift the stay

filed in *AGS Company Automotive Solutions v. United States* (1:25-cv-00255-RKE), ECF No. 40.


                                                        _____/s/ Richard K. Eaton_____
                                                                        Judge


Dated: April 17, 2026
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                       :
V.O.S. SELECTIONS, INC.; PLASTIC       :
SERVICES AND PRODUCTS, LLC d/b/a        :
GENOVA PIPE; MICROKITS, LLC;           :
FISHUSA INC.; and TERRY PRECISION      :
CYCLING LLC;                           :
                                       :
                  Plaintiffs,          :
                                       :      Before: Richard K. Eaton, Judge
            v.                         :
                                       :      Court No. 25-00066
THE UNITED STATES OF AMERICA;          :
UNITED STATES CUSTOMS AND              :
BORDER PROTECTION; PETE R.             :
FLORES, in his official capacity as    :
Acting Commissioner for United States  :
Customs and Border Protection;         :
JAMIESON GREER, in his official        :
capacity as United States Trade        :
Representative; OFFICE OF THE UNITED   :
STATES TRADE REPRESENTATIVE;           :
and HOWARD LUTNICK, in his official    :
capacity as Secretary of Commerce;     :
                                       :
                  Defendants.          :
_____ :

## ORDER

Plaintiffs V.O.S. Selections, Inc.; Plastic Services and Products, LLC d/b/a Genova Pope;

Microkits, LLC; FishUSA Inc.; and Terry Precision Cycling LLC ("Plaintiffs") are the importers

of record of entries that entered the United States subject to duties imposed by various Executive

Orders pursuant to the International Emergency Economic Powers Act ("IEEPA"). Plaintiffs

commenced this lawsuit seeking, inter alia, injunctive and monetary relief, including "damages in

the amount of any tariffs collected by Defendants pursuant to the challenged orders." Compl. at 24,

ECF No. 2.

Appx18

Plaintiffs' entries are among the millions of entries that were entered subject to IEEPA duties, which the Supreme Court ruled unlawful in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026). All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision.

In *Trump v. CASA, Inc.*, the Supreme Court held "that universal injunctions are impermissible." 606 U.S. 831, 865 (2025). That holding, however, does not apply to the orders that will be issued in this case. The Court's discussion of "whether, under the Judiciary Act of 1789, federal courts have equitable authority to issue universal injunctions" does not constitute a legal direction to this Court. *Id.* at 839. Nearly 200 years after the Judiciary Act of 1789, the United States Court of International Trade was established pursuant to the Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727 (codified as amended in scattered sections of 28 U.S.C.). To that end the Court was provided with national geographic jurisdiction. *See* 28 U.S.C. § 1581.

The Court was also given exclusive subject matter jurisdiction to hear claims like those presented in this case. This exclusive jurisdiction was recently acknowledged by the Supreme Court. *See Learning Res., Inc.*, 2026 WL 477534, at *6 n.1 ("We agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the [United States Court of International Trade]."). That is, the parties to a case in no other court will be bound by this order. Moreover, when establishing this Court, Congress cited "[c]onsiderations of judicial economy, and the need to increase the availability of judicial review in the field of international trade in a manner which results in uniformity without sacrificing the expeditious resolution of import-related disputes." 126 CONG. REC. S13344 (daily ed. Sept. 24, 1980) (statement of Sen. Dennis DeConcini). The Constitution requires this uniformity. U.S. CONST. art. I § 8, cl. 1 (providing that "all Duties, Imposts and Excises shall be uniform throughout the United States").

Finally, the Chief Judge has indicated that I am the only judge who will hear cases pertaining to the refund of IEEPA duties. So there is no danger that another Judge, even one in this Court, will reach any contrary conclusions. To find otherwise would be to thwart the efficient administration of justice and to deny those importers who have filed suit the efficient resolution of their claims, and to deny entirely importers who have not filed suit the benefit of the *Learning Resources* decision.

Accordingly, it is hereby

**ORDERED** that, with respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties. For the avoidance of doubt, nothing in this order addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that are otherwise before this Court. *See Axle of Dearborn, Inc. v. Department of Commerce et al.* (1:25-cv-00091-3JP); and it is further

**ORDERED** that this order is suspended to the extent that it requires immediate compliance.

/s/ Richard K. Eaton
Judge

Dated: April 17, 2026
       New York, New York

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

|  |  |
|---|---|
| V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC d/b/a GENOVA PIPE, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP in his official capacity, EXECUTIVE OFFICE OF THE PRESIDENT, THE UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, PETE R. FLORES in his official capacity, JAMIESON GREER in his official capacity, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, and HOWARD LUTNICK in his official capacity, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     Court No. 25-00066 |

## DEFENDANTS' NOTICE OF APPEAL

Notice is hereby given that defendants appeal to the United States Court of Appeals for the Federal Circuit from the Court's injunction order of April 17, 2026.  *See* ECF No 82.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

Appx21

s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9063
claudia.burke@usdoj.gov

June 2, 2026                              *Attorneys for Defendants*

2

3

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on June 2, 2026, I caused the foregoing "DEFENDANTS' NOTICE

OF APPEAL" to be filed and served electronically via the Court's CM/ECF system.


<u>/s/Claudia Burke</u>

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

|  |  |
|---|---|
| V.O.S. SELECTIONS, INC.; PLASTIC SERVICES AND PRODUCTS, LLC d/b/a GENOVA PIPE; MICROKITS, LLC; FISHUSA INC.; and TERRY PRECISION CYCLING LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP in his official capacity, EXECUTIVE OFFICE OF THE PRESIDENT, THE UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, PETE R. FLORES, in his official capacity, JAMIESON GREER, in his official capacity, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, and HOWARD LUTNICK, in his official capacity, <br><br> Defendants. | Court No. 25-00066 |

### DECLARATION OF EXECUTIVE ASSISTANT COMMISSIONER SUSAN S. THOMAS

I, Susan S. Thomas, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Assistant Commissioner (EAC), Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since March 2026.   My work includes enforcing over 500 U.S. customs and trade laws, including the implementation of all tariff measures under the International Emergency Economic Powers Act (IEEPA),

1

overseeing 14 trade agreements, directing CBP's seven Priority Trade Issues in collaboration with 49 partner government agencies, and overseeing the regulatory framework for more than $3 trillion in legitimate trade each year.  Previously, I served as the Acting Executive Assistant Commissioner, Office of Trade, from March 2025 until March 2026.  Prior to my tenure as the Acting Executive Assistant Commissioner of the Office of Trade, I held various leadership positions within CBP focused on cargo security, trade enforcement, and operation management.  I have been employed by CBP or its predecessor agencies since 1995.

2.  As the EAC, I lead and oversee CBP's Office of Trade (OT).  OT consolidates the trade policy, program development, and compliance measurement functions of CBP, leads development of CBP's national strategy to enforce trade laws, and manages the design and implementation of strategic initiatives for trade compliance and enforcement.  OT directs national enforcement responses through coordination with international partners and other U.S. government agencies, and it directs the enforcement of intellectual property rights, the identification of risks to detect and prevent the importation of contaminated agricultural or food products, the enforcement of free trade agreement eligibility, the administration of CBP's efforts to enforce the statutory prohibition on the importation of goods made with forced labor, and the administration of the nation's antidumping and countervailing duty (AD/CVD) laws.  Finally, OT oversees the issuance of all CBP regulations, legally binding rulings and decisions, informed compliance publications and structured programs for external CBP training and outreach on international trade laws and CBP regulations.

3.  As the OT EAC, I report directly to Commissioner Rodney S. Scott.  The Executive Director of the Trade Programs Directorate within the Office of Trade, Brandon Lord,

2

has filed numerous declarations in *Euro-Notions Florida, Inc. v. United States et al.* (Court No. 25-00595) and *Atmus Filtration, Inc. v. United States, et al.* (Court No. 26-01259), outlining CBP's progress in refunding IEEPA duties, copies of which are included as Exhibits A-I. Executive Director Lord reports directly to me.

4. In the Court's Order of May 27, 2026, the Court ordered the parties to "show cause as to why the court should not remove the suspension of immediate compliance with its order that U.S. Customs and Border Protection ('Customs') liquidate or reliquidate, without regard to IEEPA duties, all entries entered subject to IEEPA duties," and it ordered that "each of the parties shall submit a brief, not longer than 10 pages, in response to this Order to Show Cause." Immediate compliance with the Court's order is not possible.

### IEEPA Duties

5. Over 330,000 importers have made over 53 million entries for which they deposited or paid IEEPA duties, and as of March 4, 2026, the total amount of IEEPA duties deposited or paid is approximately $166 billion. Ex. B, Lord Decl. ¶ 12 (March 6, 2026). CBP is facing an unprecedented volume of refunds, and for reasons previously explained, CBP's typical refund mechanisms were insufficient to address this volume. Ex. B, Lord Decl. ¶¶ 16-17 (March 6, 2026).

### Development of CAPE

6. CBP is committed to refunding IEEPA duties as quickly and efficiently as possible to comply with all legal requirements and final court orders. In accordance with 19 U.S.C. § 1500(d), CBP liquidates each entry, including making revenue adjustments via bills or refunds, as appropriate, in accordance with 19 U.S.C. § 1505(b). The entry legally serves as CBP's basis of accounting upon which revenue adjustments are made. To address this unprecedented volume of refunds, and to respond to the Court's orders to effectuate

3

refunds as efficiently as possible, CBP developed and deployed, within a 45-day period of time, a new capability within CBP's system of record for imported merchandise — the Automated Commercial Environment (ACE) — to calculate and provide valid refunds of additional *ad valorem* duties imposed under IEEPA, referred to as the Consolidated Administration and Processing of Entries (CAPE) functionality. CAPE enables the update, liquidation, and calculation of interest for each impacted entry, along with the consolidation of refunds by importer of record or CBP Form 4811 Designee and liquidation date, providing for the required information as well as efficiency gains for both industry and government. The CAPE components and functionality are described with specificity in Executive Director Lord's March 12, 2026 Declaration. Ex. C, Lord Decl. ¶¶ 3, 5, 7, 9 (March 12, 2026).

7. CBP is developing and deploying CAPE in phases, in consultation with the Court and plaintiffs in *Euro-Notions* (and previously in *Atmus Filtration*) and associated conferences. It has been CBP's understanding that the Court has been satisfied with the development and deployment of CAPE and the refund process, and accordingly the Court's order of May 27, 2026 was puzzling. CBP's deployment of CAPE has been on track, and the agency has not changed course since the refund process began. Phased development allows CBP to begin refunding IEEPA duties paid on the largest groups of entries, by refund amount, faster. If CBP waited to deploy CAPE until it developed the programming necessary to address all entry and refund scenarios, deployment of CAPE and therefore, the initiation of the refund process, would have been significantly delayed.

8. The first phase of the CAPE functionality became available for use by importers and their brokers in ACE at 7:11am eastern time on Monday, April 20, 2026. CAPE Phase 1 covers unliquidated entries and entries that have been liquidated within 80 days of the

4

CAPE Declaration acceptance. Ex. E, Lord Decl. ¶¶ 14-15 (March 30, 2026). More than 60% of the IEEPA duties paid are eligible for refund in Phase 1 of CAPE. As of 3pm eastern time on June 1, 2026, 16.123 million entries have been processed in CAPE Phase 1, and $89.57 billion in both potential and certified refunds of IEEPA duties have been accepted for processing in CAPE. Of the $89.57 billion, approximately $22.80 billion in refunds, including principal and interest, have been completed and sent to the Department of the Treasury for disbursement.

9. IEEPA refunds present an unprecedented volume of entries for CBP to update, and CAPE has provided the ability to process those entry changes at record levels, providing efficiency gains for both importers and government. By way of comparison, in fiscal year 2025, CBP issued refunds for approximately 338,000 entries. By contrast, in the first six weeks of deployment, CAPE has processed IEEPA refunds for 8.44 million entries.

10. CBP continues to expand CAPE's scope to incorporate additional categories of entries as quickly as possible. As the Court is aware, CBP is currently developing additional CAPE functionality to include entries flagged for reconciliation, for which no Type 09 reconciliation entry has been filed, which remain unliquidated or are within 80 days of liquidation. CBP anticipates deploying this enhanced capability for entries flagged for reconciliation on June 29, 2026. Approximately 3.3 million entries with IEEPA duties have been flagged for reconciliation. Of these 3.3 million entries, approximately 2.8 million entries have no reconciliation entry on file, and are unliquidated or within 80 days of liquidation. Deployment of this enhanced CAPE functionality will thus cover approximately $28.7 billion in IEEPA duties paid. Once this functionality is deployed, over 80% of IEEPA duties will be eligible for refund in CAPE.

5

11. Following the deployment of enhanced functionality to cover the entries flagged for reconciliation as described in the paragraph above, CBP intends to expand CAPE functionality to cover entries that liquidated more than 80 days prior to acceptance of the CAPE Declaration, for entries filed by plaintiffs in actions in the U.S. Court of International Trade for which the Court has ordered reliquidation. Once the enhancements for the entries flagged for reconciliation described in the paragraph above are successfully deployed, CBP anticipates that CAPE functionality will be expanded to cover plaintiffs' entries liquidated beyond 80 days, and that this expansion will be deployed approximately four weeks after successful deployment of the enhancements for the entries flagged for reconciliation. To adhere to this timeframe, CBP will need to receive each plaintiff's 11-digit importer of record number(s) approximately two weeks prior to deployment.

12. At this time, CBP does not intend to refund IEEPA duties on entries of non-plaintiffs that liquidated beyond the 80-day period because the Court's order to reliquidate all entries, including those of non-plaintiffs, without regard to IEEPA duties, is currently on appeal. At this time, CBP is limiting its planned enhanced CAPE functionality, as described in the preceding paragraph, to plaintiffs with pending court cases for which the Court has ordered reliquidation. CBP is required to liquidate/reliquidate entries in accordance with the law. Should the Court's order become final and require the reliquidation of entries of all importers, CBP intends to fully comply with the Court's final decision as expeditiously as possible.

13. CBP has identified, and discussed with this Court in closed settlement conferences, the remaining categories of entries for which IEEPA duty refunds still need to be addressed. Those categories include (a) entries covered by a drawback claim; (b) entries flagged for

6

reconciliation for which a Type 09 reconciliation entry has been filed; (c) entries included on an administrative protest; and (d) entries not filed in ACE. Each of these categories of entries presents unique circumstances requiring either specific CAPE functionality adjustments or an alternative approach. Entries flagged for reconciliation for which a Type 09 reconciliation entry has been filed pose an enhanced risk of over-refunding the duties and require additional evaluation and controls. Similarly, entries designated on drawback claims are at greater risk for over-refunding duties and require additional evaluation and controls. Once CBP has expanded CAPE to capture the categories set forth in paragraphs 10 and 11 above, CBP will address these remaining categories of entries as expeditiously and efficiently as it can, consistent with all applicable laws and final court orders.

14. The feedback that CBP has received from the trade community on CAPE and IEEPA refund processing has generally been positive. Although some issues remain to be worked out, overall, the trade community appears satisfied with the speed and efficiency of the refund process.

15. CAPE is designed to operate consistently for all importers, whether large or small. A CAPE Declaration may be filed by any importer, and it does not require the assistance of a broker or other trade professional. CBP designed CAPE as a web-based portal to ensure that all parties have equal access, and to ensure large businesses do not gain an unfair advantage, particularly as small businesses account for the overwhelming majority of importers.[1] CBP has engaged in extensive messaging to notify all parties of the availability of CAPE for seeking a refund on appropriate entries, including the

---

[1] Indeed, CBP analysis conducted in 2022 found that between 86.4% and 96.4% of all importers would be considered a small business based on Small Business Administration standards.

7

establishment of a public webpage on IEEPA refunds, with numerous Frequently Asked Questions (FAQs), public messages, trainings and guidance manuals and documents. CBP supported "Small Business Month" in May 2026 by offering four webinars specifically geared toward small businesses who may be new to ACE and international trade processes. These recorded webinars will be available shortly for playback on cbp.gov.

### Status of Refunds to Plaintiffs in this Action

16. Three of the five plaintiffs in this action have availed themselves of CAPE and have filed CAPE Declarations for IEEPA refunds of 98.5% of their IEEPA duties paid. Two of the five plaintiffs in this action did not pay IEEPA duties.

### Impossibility of Immediate Compliance

17. The Lord Declaration of March 6, 2026, attached hereto as Exhibit B, explained in detail why CBP's traditional liquidation/reliquidation mechanisms could not, and still cannot, effectuate the Court's order immediately. Although CBP has successfully deployed CAPE, CBP cannot program for all functionalities at once, and it is simply not technically possible to program CAPE to immediately refund all IEEPA duties for all categories of entries for all importers. ACE functionalities, including CAPE and its enhancements, must be programmed and tested individually/sequentially to avoid unintended consequences from integrating new untested components. Each CAPE enhancement involves time for programming (varying greatly depending on the complexity of the task), testing, messaging internally and to the trade community, and a period of continuous monitoring and support for any technical issues after deployment.

18. Phase 1 of CAPE was designed to capture the majority of unliquidated entries, and CBP is proceeding to further deploy capability for CAPE to process unliquidated entries

8

flagged for reconciliation for which a Type 09 reconciliation entry has not been filed. Nonetheless, should the Court remove the suspension of immediate compliance with its order, CBP will be faced with immediate noncompliance as unliquidated entries will continue to automatically liquidate with IEEPA duties unless they have been included on a CAPE declaration.  As explained in the Lord Declaration of March 6, 2026, it is not currently possible for CBP to immediately prevent additional entries from liquidating. Ex. B, Lord Decl. ¶ 12 (March 6, 2026).  Moreover, CBP does not have sufficient personnel to immediately comply with the Court's order to manually liquidate or reliquidate all entries without IEEPA duties.  Ex. B, Lord Decl. ¶¶ 23-26 (March 6, 2026).

19. Entries of merchandise subject to AD/CVD may be processed in CAPE to remove the IEEPA duties, but they cannot be liquidated while the U.S. Department of Commerce (DOC) suspension of liquidation remains in place.  CBP has explained the administrative burdens associated with issuing pre-liquidation refunds, which is a manual process.  Ex. F, Lord Decl. ¶¶ 7-9 (April 14, 2026).  Once CBP receives instructions from DOC, it will liquidate these entries without IEEPA duties and in accordance with all applicable laws and instructions.

20. CBP is attentive to the risks of fraud and other risks to the revenue, and the need to ensure that the valid party to whom the money is due receives the refund of IEEPA duties.  With the unprecedented refund volume, CBP is addressing the heightened risk of fraud and additional preventative or remedial measures to ensure that refunds are issued to the validated party.

21. The refunds of IEEPA duties paid for shipments sent to the United States through the international postal network present unique issues and considerations because (a) entries

9

for such shipments are not made in ACE, and (b) the duties for such shipments were collected from the sender and remitted to CBP by third parties, such that CBP has no information or ability to refund the duties directly to the party who paid them, rather than merely enriching the third parties who collected and remitted the duties to CBP.

22. CBP has made the processing of IEEPA refunds a top priority. Any additional diversion of resources, which are already strained, would prevent personnel from fully carrying out the agency's critical trade enforcement mission. Personnel would be redirected from responsibilities that serve to mitigate imminent threats to national and economic security. Those activities include, but are not limited to, detecting and disrupting goods imported into the United States with a false declaration of country of origin to avoid payment of duties found by the courts to be lawful, including those imposed under Section 301 of the Trade Act of 1974 and Section 232 of the Trade Expansion Act of 1962, protecting against free trade agreement abuse, preventing goods made with forced labor from entry into the United States, detecting evasion of duties lawfully imposed under the nation's antidumping and countervailing duty laws, and other illicit actions that threaten U.S. domestic industry and the safety of individuals within the United States.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 4th day of June, 2026.

Susan S. Thomas
Executive Assistant Commissioner
Office of Trade
U.S. Customs and Border Protection

10

Appx33

IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE
Before Honorable Richard K. Eaton, Judge

| | |
|---|---|
| V.O.S. SELECTIONS, INC., *et al.,* | |
| Plaintiffs, | |
| v. | Case No. 25-00066-RKE |
| DONALD J. TRUMP, *et al.,* | |
| Defendants. | |

### Plaintiff's Motion for Class Certification

In accordance with Rule 23 of the Rules of the United States Court of International Trade, Plaintiff Terry Precision Cycling LLC moves for an order certifying the following class under Rule 23(b)(2):

> All importers who paid tariffs imposed under the International Emergency Economic Powers Act, Pub. L. No. 95-223, Tit. II, 91 Stat. 1626 (1977) (50 U.S.C. § 1701 *et seq.*) ("IEEPA") and who hold claims that are not currently eligible for processing and refund through the Consolidated Administration and Processing of Entries ("CAPE") program.

Plaintiff further requests that, upon certifying the class, this Court enter an injunction directing Defendants to make the CAPE system available to process and pay refund claims, with interest, for all class members.  In support of this Motion, plaintiff submits the accompanying Memorandum of Law.

1

Dated: June 4, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
Milbank LLP
1101 New York Ave. NW
Washington, DC 20005
202-835-7505
nkatyal@milbank.com
crohsinzdak@milbank.com

Jeffrey M. Schwab
Reilly W. Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, Microkits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

2

IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE
Before Honorable Richard K. Eaton, Judge

| | |
|---|---|
| V.O.S. SELECTIONS, INC., *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Defendants. | Case No. 25-00066-RKE |

### Proposed Order

Upon consideration of Terry Precision Cycling LLC ("Plaintiff")'s Motion for Class Certification, and after due deliberation, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1. Plaintiff has satisfied all requirements of Federal Rule of Civil Procedure 23 and Rule 23 of the U.S. Court of International Trade, and the Court certifies this action as a class action as follows below.

2. Having satisfied the requirements of Federal Rule of Civil Procedure 23(b)(2) and Rule 23 of the U.S. Court of International Trade, the following class is certified:

> All importers who paid tariffs imposed under the International Emergency Economic Powers Act, Pub. L. No. 95-223, Tit. II, 91 Stat. 1626 (1977) (50 U.S.C. § 1701 *et seq.*) ("IEEPA") and who hold claims that are not currently eligible for processing and refund through the Consolidated Administration and Processing of Entries ("CAPE") program.

3. Plaintiff is found to fairly and adequately protect the interests of the Class and is appointed as the class representative.

4. Milbank LLP and the Liberty Justice Center are found to be adequate counsel for the Class and are appointed co-lead counsel in this matter.

Dated: _____          _____
                           JUDGE, United States Court of International Trade

IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE
Before Honorable Richard K. Eaton, Judge

|  |  |
|---|---|
| V.O.S. SELECTIONS, INC., *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 25-00066-RKE |

**Memorandum of Law in Support of
Plaintiff's Motion for Class Certification**

On February 20, 2026, the Supreme Court held that the International Emergency Economic Powers Act ("IEEPA") does not authorize the President to impose tariffs. *Learning Res., Inc.* v. *Trump*, 146 S. Ct. 628 (2026). Because the Supreme Court held that *all* of the IEEPA tariffs were unlawfully collected, *id.* at 637, the government is required to process and pay refunds on *all* entries on which IEEPA tariffs were charged. But so far, the government has refused to open the Consolidated Administration and Processing of Entries ("CAPE") program for refunding IEEPA tariffs to entries that are more than 90 days past liquidation. Instead, the government insists that it needs individualized court orders to pay refunds on those purportedly "finally liquidated" entries, and it asserts that—under *Trump* v. *CASA, Inc.*, 606 U.S. 831 (2025)—this Court lacks the power to order relief for any importer that is not currently a plaintiff.

As explained in plaintiffs' simultaneously-filed response to this Court's order to show cause, the government's position is dead wrong. The government has the power to reliquidate any entry to refund the IEEPA tariffs, and *CASA* does not bar

the Court from ordering the government to process and pay refunds on *all* IEEPA tariffs through CAPE. But this Court can resolve any ambiguity as to *CASA*'s application by certifying a Rule 23(b)(2) class. Indeed, Rule 23(b)(2) is tailor-made for cases like this because it permits a court to certify a class of plaintiffs that are entitled to "indivisible" injunctive or declaratory relief. *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 360 (2011) (citation omitted). That is precisely the case here: The Supreme Court has already held the IEEPA tariffs unlawful across the board, meaning that everyone who paid IEEPA tariffs is entitled to a refund through CAPE. This Court should therefore certify the proposed class of all importers who paid unlawful IEEPA tariffs on entries that are currently ineligible for CAPE, obviating any need for drawn-out litigation regarding the application of *CASA*.

## Legal Standard

"USCIT Rule 23 is essentially the same as Fed. R. Civ. P. 23." *Baxter Healthcare Corp.* v. *United States*, 925 F. Supp. 794, 797 n.4 (Ct. Int'l Trade 1996). Under USCIT Rule 23, a class may be certified where the four prerequisites of Rule 23(a) are satisfied—numerosity, commonality, typicality, and adequacy of representation—and the action falls within one of the categories described in Rule 23(b). USCIT Rule 23(b)(2) authorizes class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." As the Supreme Court has explained, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared

unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation modified).

Argument

I.     **Rule 23(a)'s Prerequisites Are Satisfied.**

A.     **The class is so numerous that joinder of all members is impracticable.**

The proposed class is massive.  Over 330,000 importers paid IEEPA tariffs, across more than 53 million entries.  Of the $166 billion that was unlawfully collected under IEEPA, "there are billions of dollars of duties that currently cannot be processed by the CAPE program but still must be refunded." Dkt. No. 89 at 2.  "[M]ost of the refunds that have been processed so far have gone to large importers, not small," leaving the vast majority of putative class members' claims outstanding.  *Ibid.* Thus, a class of those who hold claims that cannot currently be processed readily satisfies Rule 23(a)'s numerosity requirement.  *E.g.*, *Consol. Rail Corp.* v. *Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"); *see also Baxter*, 925 F. Supp. at 796 (finding numerosity requirement was met when "[t]he number of potential claimants may be as high as one hundred thousand").

B.     **Commonality is satisfied because the question of law is identical for all class members.**

There is very little left to dispute in this case.  The Supreme Court has already held that all IEEPA tariffs are invalid.  *Learning Res.*, 146 S. Ct. at 646.  The government has already established an administrative system for refunding those unlawfully collected tariffs with interest, and it has indicated its intent to make that

3

system available for all entries that are unliquidated or that liquidated less than 90 days ago. But the government asserts that it cannot process or pay refunds under CAPE for entries liquidated more than 90 days ago because it needs individualized court orders. *See* Dkt. No. 88 at 2-3.

The sole remaining question of law is therefore whether the government has the authority to reliquidate entries liquidated more than 90 days ago.[1] With respect to that question, all putative class members are identically situated. The government argues that it *categorically* lacks authority to issue refunds through CAPE for entries liquidated more than 90 days ago absent a court order. *See* Dkt. No. 88 at 2-3. It does not argue it has the power to issue refunds to *some* class members but not others, meaning the dispute is binary and applies equally to all claimants. Likewise, the remedy sought—access to CAPE—is the same for all class members. *Cf. Dukes*, 564 U.S. at 349-352 (holding Federal Rule of Civil Procedure 23(a)(2) requires not only common questions, but common questions that can generate common answers).

## C. The claims of the named plaintiff are typical of the class.

Plaintiff Terry Cycling, which seeks to certify the class, has multiple entries that are currently ineligible for CAPE because they are more than 90 days post-liquidation on which they paid IEEPA duties. *See* Decl. of Nik Holm ¶ 3. Its claims are therefore typical of the class in every relevant sense because the class is defined

---

[1] While the government asserts it lacks authority to reliquidate entries that liquidated more than 90 days ago, the government, as of now, has limited the availability of CAPE to entries that liquidated "within the preceding 80 days." Decl. of Brandon Lord ¶ 15(c), *Atmus Filtration, Inc.* v. *United States*, No. 26-01259 (Ct. Int'l Trade Mar. 31, 2026), Dkt. No. 51.

purely in terms of its eligibility for CAPE, and the relief it seeks is simply access to CAPE.  *See Baxter*, 925 F. Supp. at 797 ("Differences in claims for relief do not destroy typicality if the constitutional and other legal claims raised by the representative parties, and common to the class members, predominate.").

### D.     Plaintiff's counsel can protect the interests of the class.

Plaintiff and its counsel—Milbank LLP and the Liberty Justice Center—have already demonstrated their capacity to represent the class.  They have successfully litigated this case in this Court, the Federal Circuit, and the Supreme Court, prevailing at every stage.  Like in *Baxter*, "[r]epresentative plaintiffs' claims are substantial; no conflicts appear; and counsel are experienced."  925 F. Supp. at 797.

## II.    Certification Under Rule 23(b)(2) Is Appropriate.

Plaintiff's request sits in the heartland of Rule 23(b)(2).  All class members are uniformly affected by the government's refusal to make the CAPE system available for entries that were liquidated more than 90 days ago.  And the class seeks a single, indivisible injunction directing the government to make CAPE available to *everyone* who paid unlawful IEEPA tariffs.

This Court's analysis in *Baxter* supports certification of a Rule 23(b)(2) class. In that case, plaintiffs sought certification of a class consisting of those who had paid an allegedly unlawful Harbor Maintenance Tax.  Judge Restani recognized that Rule 23(b)(2) relief might have been appropriate but for two things:  First, at the time the plaintiffs asked for certification, the case had become "predominantly an action for monetary relief."  *Baxter*, 925 F. Supp. at 798.  Second, Judge Restani found that plaintiffs already had an alternative remedial pathway that was preferable, and the

Court had "little doubt" that the government would "make refund[s] to the extent required by law." *Ibid.* Neither is true here. Not only is this not *predominantly* an action for monetary relief, the putative class does not seek monetary relief from this Court *at all.* It does not, for example, ask this Court to determine the appropriate amount of each class member's refund, nor does it ask the Court to award damages in any particular amount. Instead, the class seeks a uniform injunction requiring the government to make CAPE accessible to all those who paid the unlawful IEEPA tariffs. And unlike in *Baxter*, there is no better alternative for class members to obtain relief. Rather, the government's proposal is much worse for everyone because it would force each importer to go to court to get an individual order, unnecessarily burdening the importers, the Court, and the government itself. This is the exact situation Rule 23(b)(2) was designed to avoid.

Moreover, certifying a class under Rule 23(b)(2) would be consistent with the Supreme Court's decision in *Dukes.* In that case, the Court recognized that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an *individualized* award of monetary damages." 564 U.S. at 360-361 (emphasis added). And the Court found that certification was improper in that case because the putative class members each had highly individualized claims for monetary relief that involved unique factual circumstances, and those individualized issues would predominate. *See id.* at 366-367. But the Court held that Rule 23(b)(2) certification *is* appropriate where "a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* at 360. That is precisely the case

here.  All that the class members need is an injunction entitling them to have their refunds processed and paid through CAPE; the Court will not be required to address any of the individualized questions about the extent of the refund that each class member will ultimately receive through CAPE.

Post-*Dukes* court of appeals precedents further confirm that Rule 23(b)(2) certification is appropriate in cases like this one, where the class seeks an injunction or declaration that will ultimately lead to the award of monetary relief outside the judicial forum.  For example, in *Johnson* v. *Meriter Health Services Employee Retirement Plan*, 702 F.3d 364 (7th Cir. 2012) (Posner, J.), the Seventh Circuit affirmed certification of a Rule 23(b)(2) class that sought "a declaration of the rights" of a pension plan and "an injunction ordering [the defendant] to conform the text of the plan to the declaration." *Id.* at 371.  The court explained that because there would simply be a single injunction requiring the defendant (and not the court) to "comput[e]" the new entitlement and refund the money accordingly, the monetary relief would be "merely incidental" and permissible under a Rule 23(b)(2) class action. *Ibid.* (citation modified).  Other courts of appeals have held the same. *See Amara* v. *CIGNA Corp.*, 775 F.3d 510, 524 (2d Cir. 2014) (holding an analogous Rule 23(b)(2) class action proper when "[i]ndividual litigation would make no difference because 'each individual class member would' not 'be entitled to a *different* injunction or declaratory judgment'" (quoting *Dukes*, 564 U.S. at 360)).

The Sixth Circuit's decision in *Gooch* v. *Life Investments Insurance Co. of America*, 672 F.3d 402 (6th Cir. 2012), is particularly on-point because there, the

court considered both the propriety of certifying a Rule 23(b)(2) class where the relief could "serve[] as a predicate for later monetary relief" and the propriety of certifying a class where (as here) the merits have of the claim have already been decided. *Id.* at 429. The court held that neither factor precludes class certification under Rule 23(b)(2). *Id.* at 429, 432. With respect to the timing issue, it explained that while class certification must generally be decided before the merits, that rule reflects the need to "prevent[] potential plaintiffs from awaiting merits rulings in a class action before deciding whether" to participate. *Id.* at 432 (citing *Am. Pipe & Constr. Co.* v. *Utah,* 414 U.S. 538, 546 (1974)). But that consideration does not apply under Rule 23(b)(2), where participation in the class is mandatory, eliminating the potential for gamesmanship. *Id.* at 433.[2]

Indeed, this case involves the complete opposite of gamesmanship. Plaintiff did not move for class certification at the outset because there was no reason to anticipate that, after the Supreme Court itself had invalidated the IEEPA tariffs, the government would nevertheless refuse to issue refunds to importers based purely on the liquidation date of their entries without a court order forcing it to do so. Without certification, the government will undoubtedly continue to advance its view that

---

[2] For that reason, the CIT's decision in *Gilda Industries, Inc.* v. *United States*, 645 F. Supp. 2d 1296 (Ct. Int'l Trade 2009), is irrelevant. In that case, the CIT found that it was inappropriate to certify a post-merits class under Rule 23(c), where participation is optional. Moreover, *Gilda* relied heavily on the text of a prior version of USCIT Rule 23(c) that no longer exists. *Id.* at 1298 ("USCIT Rule 23(c), which is modeled on the Federal Rules of Civil Procedure, permits alteration or amendment of an order with respect to class certification 'before the decision on the merits.'"). The relevant portion of the Rule 23(c) now reads, "An order that grants or denies class certification may be altered or amended before final judgment."

*CASA* bars any injunctive remedy for importers who are not plaintiffs in this suit. As a result, potentially tens of thousands of identically situated importers may be required to initiate their own refund actions, all of which will present the same legal question that this Court will then have to resolve in each case on an individual basis. Certification of Plaintiff's proposed Rule 23(b)(2) class avoids that absurd result.

**Conclusion**

For the reasons set forth herein, plaintiff respectfully requests that this Court certify the proposed class under Rule 23(b)(2).

Dated: June 4, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*

Neal Kumar Katyal
Colleen E. Roh Sinzdak
Milbank LLP
1101 New York Ave. NW
Washington, DC 20005
202-835-7505
nkatyal@milbank.com
crohsinzdak@milbank.com

Jeffrey M. Schwab
Reilly W. Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, Microkits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

## Certificate of Compliance

I, Neal Kumar Katyal, hereby certify that this brief complies with the 14,000 word limitation of the United States Court of International Trade set forth in Standard Chambers Procedure § 2(B)(1) because this brief contains 2,336 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

Dated: June 4, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
Milbank LLP
1101 New York Ave. NW
Washington, DC 20005
202-835-7505
nkatyal@milbank.com
crohsinzdak@milbank.com

Jeffrey M. Schwab
Reilly W. Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, Microkits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

**Certificate of Service**

I, Neal Kumar Katyal, one of the attorneys for Plaintiffs, certify that the foregoing document was filed electronically with the Court's Case Management/ Electronic Case Filing (CM/ECF) system on June 4, 2026. The Court and/or Clerk of Court may serve and give notice to counsel by CM/ECF electronic transmission.

Dated: June 4, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
Milbank LLP
1101 New York Ave. NW
Washington, DC 20005
202-835-7505
nkatyal@milbank.com
crohsinzdak@milbank.com

Jeffrey M. Schwab
Reilly W. Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, Microkits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

Appx48

IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE

Before Honorable Richard K. Eaton, Judge

| | |
|---|---|
| V.O.S. Selections, Inc., *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>Donald J. Trump, *et al.,*<br><br>Defendants. | Case No. 25-00066-RKE |

**Declaration of Nik Holm
in Support of Plaintiff's Motion for Class Certification**

I, Nik Holm, hereby declare as follows:

1.      I am the President of Terry Precision Cycling, LLC ("Terry Precision" or the "Company").  I am authorized to make this declaration on behalf of the Company. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      Terry Precision is an importer of goods into the United States and is the Importer of Record for the affected entries described below.  The Company paid tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") directly upon arrival of the below entries.

3.      The Company has at least four entries that have been finally liquidated by U.S. Customs and Border Protection ("CBP").  Those entries are:

- Entry Number GN243516186, liquidated on July 29, 2025, with an approximate refund amount of $495.90;

1

- Entry Number GN243548866, liquidated on August 25, 2025, with an approximate refund amount of $79.80;

- Entry Number GN243112150, liquidated on December 26, 2025, with an approximate refund amount of $1,839.60; and

- Entry Number GN243169168, liquidated on January 24, 2026, with an approximate refund amount of $1,298.20.

4. The Company filed a claim for a refund of IEEPA tariffs through CBP's Consolidated Administration and Processing of Entries ("CAPE") program under CAPE claim number 100000159885. The CAPE system rejected the Company's claim with the following message: "ENTRY SUMMARY IS IN FINAL LIQUIDATION STATUS."

5. The Company has been informed that its refunds cannot be processed because the affected entries are in final liquidation status. As a result, the Company has been denied access to the CAPE program—the only administrative mechanism CBP has made available to process IEEPA tariff refunds—solely because the Company's entries reached final liquidation before the refund process was initiated.

6. The Company currently has no administrative mechanism through which it may seek refunds for those finally liquidated entries. Despite having paid IEEPA tariffs that are eligible for refund, the Company is barred from obtaining relief through the CAPE program and has no alternative administrative remedy available.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2026.

_____Nik Holm_____

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| EURO-NOTIONS FLORIDA, INC., | |
| Plaintiff, | |
| v. | Court No. 25-00595 |
| UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, | |
| Defendants. | |

**DECLARATION OF BRANDON LORD**
**RESPONDING TO MAY 27, 2026 COURT ORDER**

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022.   In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act (IEEPA).   I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual

1

Property Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties. Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

2. CBP has developed a new capability within its system of record for imported merchandise — the Automated Commercial Environment (ACE) — to calculate and provide valid refunds of additional *ad valorem* duties imposed under IEEPA. This new ACE functionality is called the Consolidated Administration and Processing of Entries (CAPE).

3. The first phase of the CAPE functionality became available for use by importers and their brokers in ACE at 7:11am eastern time on Monday, April 20, 2026. As of 3pm eastern time on Friday, June 5, 2026, 181,155 CAPE declarations have been submitted, of which 125,576 CAPE declarations passed the file validations.[1] The primary reasons that CAPE declarations fail the file validations are: (1) Importer of record or filer mismatches on CAPE declarations, (2) Entry Number validations (e.g., entry number is incorrect length; entry number does not exist), (3) .CSV file not in alignment with the template published in the ACE portal.

4. As of 3pm eastern time on Friday, June 5, 2026, (a) the CAPE declarations that passed the file validations cover 16.74 million entries with IEEPA duties that passed the entry-specific validations and were accepted for the removal of IEEPA duties through CAPE;[2]

---

[1] Please refer to ¶3.a of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed April 14, 2026, ECF 15, for a description of the file validations performed by the CAPE functionality after a CAPE Declaration is submitted.

[2] Please refer to ¶3.b of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed

2

(b) 10.60 million of the accepted entries have subsequently been liquidated and/or reliquidated without IEEPA duties; and (c) 3.99 million entries included on CAPE declarations failed the entry level validations for the following primary reasons: the entry date is past CBP's 90 day re-liquidation authority, the entry does not contain a Chapter 99 Harmonized Tariff Schedule number used to assess IEEPA duties, or the entry was already filed on a prior CAPE declaration.

5.  As of 3pm eastern time on Friday, June 5, 2026, approximately $94.94 billion in both potential and certified refunds have been accepted for processing in CAPE.  Of this total amount, refunds (duties plus interest) of approximately $23.68 billion have been completed using the CAPE Refund component,[3] certified by the agency, and sent to the U.S. Department of Treasury ("Treasury") for disbursement. CBP's financial accounting system receives updates from Treasury that indicate these CBP certified refunds are being regularly dispersed.  CBP continues to review and finalize the outstanding potential refunds via CAPE's Review and Liquidation/Reliquidation component.[4]

---

April 14, 2026, ECF 15, for a description of the entry-specific validations performed by the CAPE functionality after a CAPE Declaration successfully passes the file validations.

[3] Please refer to ¶9 of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed April 14, 2026, ECF 15, for a description of the CAPE Refund component.

[4] Please refer to ¶7 of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed April 14, 2026, ECF 15, for a description of the CAPE Review and Liquidation/Reliquidation component.

3

6.  As of 3pm eastern time on Friday, June 5, 2026, 5,535 consolidated refunds have not

    been transmitted to Treasury because Automated Clearing House account information has

    not been provided by the importer of record or its authorized CBP Form 4811 designee.

I declare that the foregoing is true and correct to the best of my knowledge, information, and

belief.

Executed this 10th day of June, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

4