**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| H.M. NABAVIAN & SONS, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 26-414** |
| | ) | **Judge Roumel** |
| THE UNITED STATES, | ) | |
| | ) | |
| **Defendant.** | ) | |

---

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

---

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

COLLIN T. MATHIAS
Trial Attorney
Commercial Litigation
Branch Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0315
Collin.T.Mathias@usdoj.gov

August 10, 2026                    *Attorneys for Defendant*

**TABLE OF CONTENTS**

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS ................................... 1

ARGUMENT .................................................................................................................. 3

     I.    This Court Lacks Jurisdiction Over These Challenges Arising Out of the IEEPA
          Tariffs ..................................................................................................... 3

     III.   H.M. Fails to State a Claim for an Illegal Exaction for Tariff Surcharges ............. 9

CONCLUSION ............................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aerolineas Argentinas v. United States*,
  77 F.3d 1564 (Fed. Cir. 1996)................................................................................................ 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 9, 10

*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*,
  390 U.S. 557 (1968) ........................................................................................................... 5, 9

*Barnes v. United States*,
  797 F. Supp. 3d 1379 (Ct. Int'l Trade 2025).......................................................................... 9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) ..................................................................................... 9

*Cary v. United States*,
  552 F.3d 1373 (Fed. Cir. 2009).............................................................................................. 9

*Casa de Cambio Comdiv S.A., de C.V. v. United States*,
  291 F.3d 1356 (Fed. Cir. 2002).............................................................................................. 10

*Evans v. United States*,
  694 F.3d 1377 (Fed. Cir. 2012).............................................................................................. 4

*Kaplan v. Conyers*,
  733 F.3d 1148 (Fed. Cir. 2013).............................................................................................. 5

*Learning Resources, Inc. v. Trump*,
  146 S. Ct. 628 (2026) ...................................................................................................... 2, 4, 5

*Nat'l Veterans Legal Servs. Program v. United States*,
  968 F.3d 1340 (Fed. Cir. 2020).............................................................................................. 4

*Ontario Power Generation, Inc. v. United States*,
  369 F.3d 1298 (2004) ............................................................................................... 6, 7, 10, 11

*Parksmith Corp. v. United States*,
  428 F. Supp. 1094 (1976)........................................................................................................ 9

*Silver Buckle Mines, Inc. v. United States*,
  132 Fed. Cl. 77 (2017) ........................................................................................................... 6

*South African Marine Corp. v. United States*,
  640 F. Supp. 247 (Ct. Int'l Trade 1986)...................................................................... 8, 9

*Southwest Airlines Co. v. United States*,
  777 F. Supp. 3d 1318 (Ct. Int'l Trade 2025)............................................................. 11

*Target Corporation v. United States*,
  134 F.4th 1307 (Fed. Cir. 2025)................................................................................. 5

*Trayco, Inc. v. United States*,
  994 F.2d 832 (Fed. Cir. 1993).................................................................................... 7

*United States v. Bormes*,
  568 U.S. 6 (2012) ............................................................................................... 4, 5, 8

*United States v. Fausto*,
  484 U.S. 439 (1988) .................................................................................................. 5

*Virgin Islands Port Authority v. United States*,
  922 F.3d 1328 (Fed. Cir. 2019)................................................................................ 11

*Virgin Islands Port Authority v. United States*,
  136 Fed. Cl. 7 (2018) .............................................................................................. 11

**Statutes**

19 U.S.C. § 58c(a)(5)(A) ............................................................................................ 11

19 U.S.C. § 1505(b) ..................................................................................................... 6

28 U.S.C. § 1346(a) ..................................................................................................... 3

28 U.S.C. § 1491(c) .............................................................................................. 2, 3, 4

28 U.S.C. § 1581(i) ...................................................................................................... 3

**Rules**

RCFC 12(b)(6) ............................................................................................................ 12

**Regulations**

19 C.F.R. § 24.22(g)(4)(i)........................................................................................... 12

19 C.F.R. § 141.1(b)(1)............................................................................................... 12

19 C.F.R. § 101.1 ......................................................................................................... 5

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

H.M. NABAVIAN & SONS, INC.,          )
                                     )
           Plaintiff,                )
                                     )
    v.                               )      No. 26-414
                                     )      Judge Roumel
THE UNITED STATES,                   )
                                     )
           Defendant.                )

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

H.M. Nabavian & Sons, Inc. (H.M. Nabavian) asks this Court to order refunds of tariffs under an illegal exaction theory.  H.M. Nabavian proposes a class with two categories: (1) importers who paid tariffs directly to U.S. Customs and Border Protection (CBP); and (2) businesses alleging that they paid unlawful discrete charges for goods because tariffs were passed on in the U.S. price (tariff surcharges).  Neither request is cognizable under the Tucker Act.

In our motion to dismiss, we demonstrated that the Court of International Trade (CIT), an Article III Federal court with exclusive jurisdiction over civil cases arising from laws providing for tariffs, is the proper court for tariff refund cases.  *See* Def. Mot. to Dismiss (Def. Mot.), ECF No. 18.  Approximately 3,700 complaints have been filed in the CIT, many covering multiple plaintiffs, seeking refunds of tariffs imposed under the International Emergency Economic Powers Act (IEEPA).  Through these cases, the CIT has entered 3,700 orders requiring tariff refunds to importers of record who paid these tariffs.  As of July 31, 2026, approximately $128.68 billion in potential refunds have been accepted for processing in Customs and Border Protection (CBP)'s online platform, the Consolidated Administration and Processing of Entries (CAPE).  *See Freestyle World, Inc. v. U.S. Customs and Border Protection et al*, No. 26-1088

(Ct. Int'l Trade), ECF No. 25 at 1.[1]  Of this total amount, refunds of approximately $100 billion have been completed, certified by CBP, and sent to the Department of the Treasury for disbursement. *Id.*

H.M. Nabavian seeks to upend this entire process and avoid the carefully crafted remedial scheme Congress has created for the assessment, collection, and refund of duties and tariffs.  However, H.M. Nabavian has not carried its burden of establishing jurisdiction, and therefore the complaint should be dismissed.  This Court lacks jurisdiction over anything within the exclusive jurisdiction of the CIT.  *See* 28 U.S.C. § 1491(c).  And the Supreme Court has already held that challenges to the IEEPA tariffs "arise out of a law of the United States providing for tariffs." *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628, 637 n.1 (2026).

The first proposed class—importers who have paid tariffs to CBP—squarely overlap with the cases for which the CIT has recently ordered refunds under its exclusive jurisdiction.  H.M. Nabavian contends that this class would only include importers who haven't yet filed in the CIT, but that is not how jurisdiction works—the cases belong in the CIT and have and will be adjudicated in the CIT.  The second proposed class—businesses that allege they have paid tariff surcharges—to the extent their claim is against the Government, they too are also claiming relief under the tariff laws, and so their claims, too, belong in the CIT.  To the extent their claims are actually against the importer who may or may not have included a tariff surcharge in the U.S. price of the good, that is not a claim against the United States and so cannot proceed in this Court.

Alternatively, the Court should dismiss the claim under Rule 12(b)(6), as H.M. Nabavian fails to state an illegal exaction claim, because it does not identify a direction by or direct action

---

[1]  For the Court's convenience, we have attached this CIT order as an exhibit to the brief.

of the Government requiring the importers of record to impose tariff surcharges on purchasers.[2]

**ARGUMENT**

 I.     **This Court Lacks Jurisdiction Over These Challenges Arising Out of the IEEPA Tariffs**

In our motion to dismiss, we demonstrated that H.M Nabavian's complaint is squarely within the CIT's exclusive subject-matter jurisdiction, and that this Court should dismiss the complaint.  Def. Mot. at 9-13.  In response, H.M. Nabavian does not squarely rebut this, but instead suggests that because the CIT would likely not agree that it has standing, it must be able to obtain relief from "any federal court."  Pl. Resp. to Mot. to Dismiss (Pl. Resp.), ECF No. 20. at 12.  Not so.

As we demonstrated in our motion to dismiss, the CIT has exclusive jurisdiction over suits "aris[ing] out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" or the "administration and enforcement" of such tariffs, duties, fees, or import taxes.  28 U.S.C. § 1581(i).  And in recognition of this exclusive jurisdiction, the Tucker Act provides that: "Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action with the exclusive jurisdiction of the Court of International Trade."  28 U.S.C. § 1491(c).[3]

---

[2] As noted in our second motion for an extension of time, the CIT held an oral argument regarding a proposed class action on August 6, 2026.  *See V.O.S. Selections et al v. Donald J. Trump et al*, No. 25-66 (Ct. Int'l Trade), ECF No. 109.  The CIT has not issued any order yet in the *V.O.S.* case.  The CIT has also ordered an August 19, 2026 hearing for a different motion for class certification.  *See Freestyle World, Inc. v. U.S. Customs and Border Protection et al*, No. 26-1088 (Ct. Int'l Trade), ECF No. 19.

[3] In a footnote, H.M. Nabavian suggests that this Court may have jurisdiction pursuant to the Little Tucker Act under 28 U.S.C. § 1346(a) if this Court lacked jurisdiction under the Tucker Act.  *See* Pl. Resp. at 4 n.1.  Not so.  It is black letter law that the Little Tucker Act creates jurisdiction in the district courts that is concurrent with the Tucker Act for covered claims

From the complaint, H.M. Nabavian thinks it is pursuing two types of refunds:  (1) businesses that "paid IEEPA tariffs directly to CBP customs agents at United States ports of entry"; and (2) businesses that paid tariff surcharges imposed by importers.  Compl. ¶¶ 52-53. However, in its response, H.M. Nabavian confusingly states that "[t]he proposed class as defined here does not include persons who paid IEEPA duties directly to CBP at a port of entry," because "Plaintiff does not contest that those claims fall within the CIT's jurisdiction."  Pl. Resp. at 8 n.2.[4]  This statement cannot be read coherently with H.M. Nabavian's complaint.  But this Court should acknowledge H.M. Nabavian's concession: any claim arising from a corporation that paid duties directly to CBP belongs at the CIT because IEEPA tariff challenges "arise[] out of [a] law of the United States providing for . . . tariffs."  *Learning Resources*, 146 S. Ct. at 637 n.1.  This is clear: approximately 3,700 complaints have been filed at the CIT seeking this same relief.  *See Freestyle World, Inc. v. U.S. Customs and Border Protection et al*, No. 26-1088 (Ct. Int'l Trade), ECF No. 25 at 1.  Therefore, H.M. Nabavian's proposed class clearly overlaps with cases actively underway at the CIT (including putative class actions), over which this Court cannot exercise jurisdiction.  *See* 28 U.S.C. § 1491(c).

H.M. Nabavian's other proposed class—businesses that paid "discrete, identifiable charges" to importers of record—also arises out of the same Executive orders and modifications to the Harmonized Tariff Schedule of the United States (HTSUS) as the first claim.  The only relevant action by the United States for both claims is identical.  Therefore, this claim, if asserted

---

of $10,000 or less.  *See United States v. Bormes*, 568 U.S. 6, 10 n.2 (2012); *Evans v. United States*, 694 F.3d 1377, 1379 n.5 (Fed. Cir. 2012).  "The Little Tucker Act follows the same rules as its bigger sibling, the Tucker Act."  *Nat'l Veterans Legal Servs. Program v. United States*, 968 F.3d 1340, 1347 n.7 (Fed. Cir. 2020)

[4]  In this footnote, H.M. Nabavian appears to request transfer to the CIT.  *See* Pl. Resp. at 8 n.2.  We do not intend to oppose transfer.

against the United States, logically must "arise[] out of [a] law of the United States providing for

. . . tariffs." *Learning Resources*, 146 S. Ct. at 637 n.1.

Recognizing this obstacle, H.M. Nabavian asserts that there is a remedial gap at the CIT

that only the Tucker Act can fill for putative class members to recover IEEPA tariff surcharges.

*See* Pl. Resp. at 15-18.  This allegation turns Tucker Act jurisdiction on its head.

"[A]n additional remedy in the Court of Claims is foreclosed when it contradicts the

limits of a precise remedial scheme." *United States v. Bormes*, 568 U.S. 6, 13 (2012).  "[T]o

permit plaintiffs to remedy the absence of a waiver of sovereign immunity in specific, detailed

statutes by pleading general Tucker Act jurisdiction—would transform the sovereign-immunity

landscape." *Id.* at 15.  It is wrong to conclude that, because judicial remedies may be unavailable

for some in a statutory scheme, those excluded parties are "free to pursue the remedies" under

the Tucker Act.  *See United States v. Fausto*, 484 U.S. 439, 443-44 (1988) (holding that the

removal of judicial relief for certain federal employees did not create a Tucker Act cause of

action), *superseded by statute as recognized by Kaplan v. Conyers*, 733 F.3d 1148, 1161 (Fed.

Cir. 2013).  Instead, "the nature of relief available after jurisdiction attaches, is, of course,

different from the question whether there is jurisdiction to adjudicate the controversy." *Avco*

*Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 561

(1968).

As we explained in our motion to dismiss, the assessment, payment, and refund of duties

is a "carefully crafted statutory scheme."  Def. Mot. at 3-4 (quoting *Target Corporation v.*

*United States*, 134 F.4th 1307, 1315 (Fed. Cir. 2025)).  Importers, including FedEx, DHL, and

UPS (H.M. Nabavian's examples, *see* Compl. ¶¶ 28-29), are the parties liable for paying tariffs

and duties to CBP.  *See* 19 C.F.R. §§ 101.1 (defining "Importer" as "the person primarily liable

5

for the payment of any duties"), 141.1(b)(1).  The statute expressly dictates when, how, and who (importers of record) can receive "[r]efunds of excess moneys deposited, together with interest thereon."  19 U.S.C. § 1505(b).

Thousands of importers of record have taken advantage of this statutory scheme to already obtain $100 billion in tariff refunds.  *See Freestyle World, Inc. v. U.S. Customs and Border Protection et al*, No. 26-1088 (Ct. Int'l Trade), ECF No. 25 at 1.  And the CIT has made clear that it intends to order the refund of *all* IEEPA duties to importers of record.  *See id.* at 2 (acknowledging that the CIT has ordered reliquidation "in more than 3,700 cases").  H.M. Nabavian's response fails to address this critical fact:  pursuant to the CIT's case-specific orders, the Government is refunding *all* IEEPA duties to importers of record.  Allowing H.M. Nabavian and others who faced tariff surcharges to proceed with an illegal exaction claim in this Court would amount to an impermissible double recovery, that this Court already has rejected. *See Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 97 (2017) (limiting scope of illegal exaction class action to "prevent[] a double recovery regarding any particular claim by ensuring that only those who were *legally responsible for paying* the 2013 maintenance fees, for which claims those fees were actually paid, are entitled to recover." (emphasis added)).

H.M. Nabavian complains that the statutory scheme has "no place for" putative class members because they lack entries for tariff surcharges that other businesses charged.  *See* Pl. Resp. at 17.  But the U.S. Court of Appeals for the Federal Circuit has dismissed a similar attempt to expand the Tucker Act.  In *Ontario Power Generators*, a Canadian power company sought a refund of coal excise taxes and reclamation fees passed on by American suppliers. *Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298, 1300 (2004).  "While the government required the U.S. suppliers to pay the coal excise tax and reclamation fees, it did not

command them to pass the tax through to Ontario; nor did Ontario pay the taxes and fees on behalf of the government to satisfy a governmental obligation." *Id.* at 1303 (citing *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996)).  Instead, "[t]he U.S. suppliers made an independent decision to include the amount of taxes and fees in the price of coal sold to Ontario.  Therefore, there is no jurisdiction under the Tucker Act based on an illegal exaction." *Id.*

Like there, within the confines of the statutory scheme, CBP charged importers of record IEEPA tariffs.  And now, CBP is refunding those duties to the importers of record who were liable for the tariff.  H.M. Nabavian has failed to identify any "command [] to pass the [tariff] through to" H.M. Nabavian.  *See id.*  Thus, there is no jurisdiction to pursue refunds of tariff surcharges imposed by other businesses.

H.M. Nabavian relies on *Trayco, Inc. v. United States*, 994 F.2d 832 (Fed. Cir. 1993), to suggest that, because it likely would be unsuccessful at the CIT, there must be jurisdiction with this Court.  *See* Pl. Resp. at 18-19.  Not so.  *Trayco* presents a wholly different situation.

In *Trayco*, CBP assessed a penalty against an importer of record for gross negligence. 994 F.2d at 835.  The importer attempted to have the penalty mitigated several times and finally paid the mitigated amount "under protest." *Id.*  The importer then commenced an action in district court, seeking a refund of the mitigated penalty amount.  *Id.*  The Federal Circuit held that, although the Federal district courts "do not possess subject matter jurisdiction over controversies within the exclusive jurisdiction of the Court of International Trade," Congress had not "explicitly granted exclusive jurisdiction to the Court of International Trade over [penalty] refund suits initiated by importers." *Id.* at 836-37.  Therefore, the Federal Circuit held that the district court possessed jurisdiction to entertain a penalty refund suit.  Notably, the case did not

involve this Court; rather, it involved the jurisdiction of the United States District Court for the District of South Carolina.

H.M. Nabavian does not seek a refund of a penalty paid under protest to CBP.  The gap in jurisdiction identified in *Trayco* does not exist here.  Rather, H.M. Nabavian seeks to circumvent the statutory scheme defining who is liable for duties and how importers recover unlawful duties.  Administrative redress and jurisdiction exist for the parties actually liable for IEEPA tariffs, as demonstrated by H.M. Nabavian's concession that claims for refunds brought by parties who paid tariffs directly to CBP belong at the CIT.  *See* Pl. Resp. at 8 n.2.

H.M. Nabavian attempts to distinguish *Bormes* because the scheme there "contains its own self-executing remedial scheme" that was "carefully circumscribed, time-limited, plaintiff-specific."  Pl. Resp. at 22 (quoting *Bormes*, 568 U.S. at 8-9).  But the customs statutory scheme is the same sort of party-specific remedial scheme.  *See* Def. Mot. at 3-4.  And H.M. Nabavian states its claims are distinguishable from previous claims that arise out of tariff laws because it does "not have any CBP entries to challenge."  Pl. Resp. at 21.  But this speaks to defects in standing—H.M. Nabavian establishing their injury-in-fact and traceability—not in the remedial scheme established by Congress for the payment and refund of duties under the Tariff Act of 1930.

H.M. Nabavian cites *South African Marine Corp. v. United States*, 640 F. Supp. 247, 250 (Ct. Int'l Trade 1986) (*SAMC)* generally to argue that they have no remedy at CIT.  Pl. Resp. at 17.  However, *SAMC* explicitly states that the statute "permits persons who have a close relationship to an import transaction to protest, and thus, to sue.  Therefore, it is important to determine exactly the nature of plaintiff's relationship to the transaction which is the subject of the challenged determination."  *SAMC*, 640 F. Supp. at 250.  The court discussed the important

8

factual distinctions made in each case in establishing whether the party had "some direct connection to the customs transaction at issue." *Id.* (quoting *Parksmith Corp. v. United States*, 428 F. Supp. 1094, 1095 (1976)). Thus, at most, *SAMC* supports that this is a factual inquiry that the CIT should decide.[5]

H.M. Nabavian's argument boils down to this: because the CIT would likely hold that it lacks traceable standing to recover tariff surcharges it paid to importers of record, H.M. Nabavian must be able to sue the United States under the Tucker Act. But jurisdiction and the availability of relief are distinct issues. *See Avco Corp*, 390 U.S. at 561. Thus, this case must be filed at the CIT and may not be heard by this Court.

## II. H.M. Nabavian Fails to State a Claim for an Illegal Exaction for Tariff Surcharges

H.M. Nabavian concedes that the first half of its complaint, tariffs paid directly to CBP, falls within the CIT's jurisdiction, which alone justifies dismissal. *See* Pl. Resp. at 8 n.2. However, if this Court were to exercise jurisdiction over H.M. Nabavian's second request, refunds of tariff surcharges imposed by importers of record, this Court would have to dismiss for failure to state a claim.

To state a valid claim for legal relief, a plaintiff "must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007)). "[C]onclusory statements" or "threadbare recitals of a cause of action's elements" are insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[5] As we noted in our motion to dismiss, we would likely argue that businesses who paid tariff surcharges to importers lack standing to proceed at the CIT. *See* Def. Mot. at 12-13; *see also Barnes v. United States*, 797 F. Supp. 3d 1379, 1384-85 (Ct. Int'l Trade 2025) (dismissing complaint challenging IEEPA tariffs because fear of being charged higher prices was speculative).

663 (2009).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation[.]". *Id.*  "[A] plaintiff has a claim for an illegal exaction only where the government has direct and substantial impact on the plaintiff asserting the claim." *Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1366 (Fed. Cir. 2002).  When the Government "did not command" importers of record to pass on tariffs to purchasers, or create a "governmental obligation" for purchasers to pay surcharges imposed by importers of record, no illegal exaction claim lies. *Ontario Power Generation*, 369 F.3d at 1300.

In our motion to dismiss, we demonstrated that H.M. Nabavian had failed to identify any Government action that required importers of record to charge tariff surcharges to purchasers. Therefore, H.M. Nabavian fails to state a claim that the Government is responsible for its injuries.  In response, H.M. Nabavian asserts that CBP required importers of record to act as collection conduits based on the "sheer magnitude of the duties."  Pl. Resp. at 28-30.[6]  In support, H.M. Nabavian refers to FedEx's website, in which FedEx stated that it was "required to assess and collect duties and taxes."  Pl. Resp. at 29 (quoting Compl. ¶ 28).  FedEx does not speak for the United States, and, regardless, that is a threadbare legal assertion.

To be clear, FedEx has filed its own case at the CIT requesting refunds of IEEPA tariffs it paid as importer of record. *See Federal Express Corporation et al v. United States*, No. 26-1150 (Ct. Int'l Trade).  On July 21, 2026, the CIT ordered CBP to reliquidate entries and refund any

---

[6] The complaint acknowledges that not all importers of record imposed discrete tariff surcharges; some simply raised prices. *See* Compl. ¶ 8 ("The proposed Class also does not include consumers whose only alleged injury is the payment of the higher retail prices charged subsequent to the IEEPA tariff regime.").  This acknowledgment demonstrates that there was no Government action that required importers of record to impose tariff surcharges.

estimated IEEPA tariff deposits FedEx made. *See id.*, ECF No. 14. And FedEx has created its own portal for its customers to recover any customer-specific refund FedEx receives from CBP. *See* International Economic Powers Act (IEEPA) Tariff Refund Portal, FedEx https://ieepa-refunds.fedex.com/ (last accessed Aug. 7, 2026). This demonstrates that H.M. Nabavian's claim is against other businesses, not the United States.

H.M. Nabavian relies on *Virgin Islands Port Authority v. United States* to suggest that tariffs were paid "in effect" to CBP. *See* Pl. Resp. at 27-29 (citing 136 Fed. Cl. 7 (2018), *aff'd* 922 F.3d 1328 (Fed. Cir. 2019)). Notably, there, the Federal Circuit concluded that the illegal exaction claim was "without merit." *Virgin Islands Port Authority*, 922 F.3d at 1334. But even there, the claim was based on direct action by CBP in "collecting the disputed fees" when CBP allegedly intercepted payments the plaintiff believed it was entitled to. *Id.* at 1333. There are no facts similar here as the United States has not "direct[ed] payment of funds to itself that [the party] asserts it had the statutory right to collect." *Virgin Islands Port Authority*, 136 Fed. Cl. at 14. For tariffs, the only Government action was requiring importers of record to pay duties, as all importers of record must. Instead, like in *Ontario Power Generation*, the Government "did not command [importers of record] to pass the [tariffs] through to" H.M. Nabavian. *See Ontario Power Generation*, 369 F.3d at 1303.

H.M. Nabavian also points to a case brought in the CIT, *Southwest Airlines Co. v. United States*, to suggest that CBP uses third parties as collection agents. *See* Pl. Resp. at 28 (citing 777 F. Supp. 3d 1318 (Ct. Int'l Trade 2025). Ignoring that *Southwest Airlines* was brought in the CIT, which had exclusive jurisdiction to entertain the claim, *Southwest Airlines* addresses an entirely different statutory and regulatory framework. There, the statute directs CBP to charge a fee "in connection with . . . the arrival of each passenger aboard a . . . commercial aircraft." 19

11

U.S.C. § 58c(a)(5)(A).  The implementing regulation then makes "[e]ach air or sea carrier . . .

responsible for collecting from the passenger the applicable fee."  19 C.F.R. § 24.22(g)(4)(i).

H.M. Nabavian has identified nothing similar here, where the applicable regulations make

importers of record liable for duties.  19 C.F.R. § 141.1(b)(1).

Therefore, H.M. Nabavian fails to state an illegal exaction claim regarding tariff

surcharges within  this Court's jurisdiction and should be dismissed under RCFC 12(b)(6) with

prejudice.

**CONCLUSION**

For these reasons we respectfully request that this Court dismiss H.M Nabavian's

complaint for either lack of jurisdiction or for failure to state a claim.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

/s/ Collin T. Mathias
COLLIN T. MATHIAS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0315
Collin.T.Mathias@usdoj.gov

August 10, 2026                              *Attorneys for Defendant*

12